Exhibit B

5.    Mark Bard objects to plaintiffs' interrogatories in total, as, with subparts, the number exceeds that permitted by the Federal Rules of Civil Procedure and the Local Rules of Procedure of the Federal District Court for District of Delaware.

6.    These General Objections, Nos. 1 through 5, shall be deemed to apply to the entirety of plaintiffs' requests for production to which this document responds.  In response to any particular Interrogatory, one or more objections may be articulated.  The statement of these objections in response to any particular Interrogatory shall in no way be deemed a waiver of the above "General Objections."

## INTERROGATORIES

1.   State your full name, address, age, occupation and marital status at the time of the accident and at present.

**RESPONSE:** Mark Bard.
332 Meadow Glen Drive, Bear, DE 19701.
Born June 26, 1960.
Employed as a package car driver for UPS since August 15, 1979.
Marital status: Married.

2.   State the name of all states in which you are licensed to operate a motor vehicle and your operator's number or license in every such state.

**RESPONSE:** Delaware; License #853596.

3.   State the date on which you first obtained a valid operator's license and whether you had one at the time of the accident.  If your answer is in the affirmative, please state:

**RESPONSE:** 1977.

(a)    whether there were any restrictions on your driver's license

**RESPONSE:** No.

(b)    whether your driver's license has ever been revoked or suspended and the reason therefore

**RESPONSE:** No.

4.    State whether you were the operator of a vehicle involved in an accident during the period beginning three (3) years before the date of the accident involved herein to the present time. If your answer is in the affirmative, describe such accident fully, including the name and addresses of all other persons involved.

**RESPONSE:** Mark Bard objects to this interrogatory as it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objection, upon information and belief, no.

5.    Describe any physical defects you had at the time of the accident and indicate the state of your health at such time and the name and address of your doctor at that time and presently.

**RESPONSE:** Mark Bard objects to this interrogatory as its use of the phrase "physical defects" renders it vague and unintelligible. Without waiving said objection, Mr. Bard's state of health is good.

6.    With respect to the vehicle you were operating at the time of the accident, state the following:

(a)    The make, model and year of the manufacture;

**RESPONSE**: P70 Model package car, 2001 Freightliner

(b)    The name and address of the owner

**RESPONSE**: United Parcel Service, Inc., 325 Ruthar Drive, Newark, DE

(c)    Whether it had previously been in any accidents;

**RESPONSE:**    Mark Bard is unaware of any previous accidents. Mark Bard reserves the right to supplement his response at which time the information becomes available.

(d)    When it was last officially inspected prior to the accident giving rise to this suit indicating the name and address of the inspection station as well as the person who inspected the same and the nature and extent of the repairs;

**RESPONSE**: Yes. UPS conducts routine 15,000 mile scheduled Preventative Maintenance Inspections. Upon information and belief, 9/23/04. Mark Bard reserves the right to supplement his response at which time the information becomes available.

(e)     How much mileage was on the tires of the vehicle;

**RESPONSE**: Mark Bard does not know specific mileage on the tires, however, the tires were in good condition. Mark Bard reserves the right to supplement his response at which time the information becomes available.

(f)     The type of brakes, their condition and the date they were last repaired or adjusted before the accident indicating the name and address of the person who made the repairs or adjustment;

**RESPONSE**: Mark Bard does not know the specific type of brake but the brakes were operating properly and in good condition. Mark Bard reserves the right to supplement his response at which time the information becomes available.

(g)     Whether the horn was in operating condition and where and when it was last used before the accident;

**RESPONSE**: Yes. Mark Bard used his horn while backing, during a pick up at Winterthur, approximately ½ hour prior to accident.

(h)     Whether the windows and doors were open or closed and whether you were able see through them clearly at the time of the accident;

**RESPONSE**: Doors were open.

(i)     Whether the steering gear was operating properly;

**RESPONSE**: Yes

(j)     whether the vehicle was registered pursuant to state law.

**RESPONSE:** Yes


7.     With respect to the scene of the accident, state:

(a) the name and directions of the streets involved, indicating the direction in which each vehicle was being operated; and,

**RESPONSE**: The accident occurred at the intersection of Twaddle Mill and Montchanin Roads in Greenville, Delaware. The UPS vehicle driven by Mark Bard approached the intersection traveling eastbound on Twaddle Mill Road and was attempting to turn left from Twaddle Mill Road on to Montchanin Road in the northbound direction. Plaintiff's decedent was traveling in the southbound direction on Montchanin Road at the time of the accident.

(b) whether you had been there before the accident, indicating when and how often; and

**RESPONSE**: Mark Bard had been to the area of the accident very often. The area of Twaddle Mill and Montchanin Roads is part of the delivery route that Mark Bard routinely drove prior to the accident in the course of his employment as a package car driver for UPS.

(c)    the address you were coming from and going to at the time of the accident.

**RESPONSE:** From 511 Twaddle Mill Road; To 4001 Montchanin Road.

8.    State with reference to the road on which you were traveling at the time of the accident:

(a)    Number of traffic lanes;

(b)    Number of parking lanes;

(d)    Nature of any traffic and parking lane(s), divider(s) or marker(s);

(e)    Grade of the road, (i.e., up, down, etc.);

(f)    Nature and extent of curbs at the side of the road;

(g)    Nature and width of shoulders of the road;

(h)    Whether the road was straight or curved;

(i)    Straightness or curve(s) of the road within 500 feet of the point of impact in either direction;

(j)    Traffic control devices or signage for each roadway.

**RESPONSE:** Mark Bard objects to this interrogatory to the extent it seeks information protected as attorney-work product. Further, the information that the plaintiffs seek in this request can be determined by plaintiffs' own investigatory efforts; Mark Bard is not obligated to conduct an investigation for the benefit of the plaintiff. Without waiving said objection, see Delaware State Police Accident Report, UPS 0001-0009.

9.    If you contend that there were any defects in the road surface or obstructions near or upon the road surface which contributed to this accident, state:

5

(a)    The location of the defects or obstructions with reference to specific landmarks;

(b)    Describe the defects or obstructions (length, width, depth, etc.).

**RESPONSE:** Mark Bard objects to this interrogatory as its use of the word "defects" renders it vague and unintelligible. Without waiving said objection, Mark Bard does not contend there were any defects in the road surface or obstructions near or upon the road surface.

10.    Explain exactly where, in terms of feet and with reference to specific landmarks, where the accident happened.

**RESPONSE:** Generally at the T intersection of Montchanin and Twaddle Mill Roads, approximately midway through the southbound lane of Montchanin Road. By way of further response, see Delaware Police Accident Report.

11.    How many seconds elapsed between the time you first realized an accident might happen and the actual happening thereof?

**RESPONSE:**  At impact.

12.    State the distance in feet between your vehicle and the motorcycle operated by Plaintiff at the time you first realized an accident might happen.

**RESPONSE:**  At impact.

13.    State, in narrative form, your version of the manner in which the accident occurred, and:

(a) all remarks or discussions before, at the time of, and immediately after the accident in question.

**RESPONSE:**  At approximately 4:00 p.m. on October 26, 2004, Mark Bard was operating a UPS package car in the eastbound direction on Twaddle Mill Road in Greenville, Delaware near the intersection of Twaddle Mill and Montchanin Roads. Mr. Bard came to a complete stop at the end of Twaddle Mill Road. Intending to make a left turn into the northbound direction of Montchanin Road, Mark Bard looked multiple times in both directions of traffic on Montchanin Road to determine when it was safe to proceed. Mr. Bard crept approximately 10-12 feet forward of the stop sign up to the demarcation line between the pavement and macadam on Twaddle Mill Road to improve his view of traffic conditions. At or

6

near the demarcation line, and determining that there was no traffic coming in either direction, Mr. Bard began to make a left hand turn. Several feet into his turn he observed a motorcycle come into view at a high rate of speed at the point of the stone bridge, south of the intersection. When Mr. Bard saw the motorcycle, he stopped the van and observed plaintiff's decedent raise his head and upper torso from the motorcycle and apply his brakes causing the motorcycle's rear tire to lift off the ground while continuing to move straight ahead and directly into Mr. Bard's stopped vehicle. Although Mr. Bard stopped his vehicle, he could do nothing to avoid being impacted by the motorcycle. The motorcycle struck the front driver side hood of the UPS package car.

14.    With respect to the first time you saw the Plaintiff involved in this accident immediately prior to its occurrence, state with reference to specific landmarks at the scene:

(a)    where your vehicle was and the speed thereof;

**RESPONSE:** Moving out onto Montchanin Road, in the southbound lane.

(b)    where the Plaintiff was and his speed;

**RESPONSE:** Plaintiff's decedent was operating a motorcycle on Montchanin Road on the stone bridge at a high rate of speed.

(c)    the course of your vehicle thereafter, indicating any changes in the direction or speed.

**RESPONSE:** Mr. Bard stopped his vehicle leaving sufficient space for plaintiff's decedent to steer around his vehicle.

15.    What was the speed of your vehicle:

(a)    500 feet from point of impact;

(b)    250 feet from point of impact;

(c)    100 feet from point of impact;

(d)    50 feet from point of impact;

(e)    At point of impact.

**RESPONSE:** Mr. Bard was traveling on Twaddle Mill Road at or below the posted speed limit of 30mph at 500 ft., 250 ft., 100 ft. and 50 ft. from the point of impact. At the point of impact, Mark Bard was stopped.

7

16.     Describe any action you took prior to the impact in order to avoid the accident, specifying the details thereof and indicating the position of your vehicle, as well as the speed of your vehicle at the time you took such action.

**RESPONSE:** As soon as Mr. Bard first observed plaintiff's decedent, Mr. Bard stopped his vehicle, thereby allowing plaintiff's decedent as much time and space as possible to steer around Mr. Bard's vehicle or to come to a safe stop.

17.     Did you see any indication by Plaintiff from the time you first observed him up to the time of impact that Plaintiff was aware of your vehicle? If yes, state:

(a)     Nature of the indication;

(b)     Distance in feet from where plaintiff gave such indication to the point of impact.

**RESPONSE:** Yes. When Mr. Bard first observed plaintiff's decedent on the stone bridge, plaintiff's decedent raised his head and upper torso from the motorcycle, and applied his brakes, indicating to Mr. Bard that he was aware of the presence of Mr. Bard's vehicle.

18.     When you first saw the Plaintiff, state the distance in feet and geographical location from:

(a)     Front of your vehicle to point of impact;

(b)     Plaintiff to point of impact.

**RESPONSE:** The distance between the stone bridge and the intersection.

19.     Was there anything which distracted your attention from the operation of your vehicle within 500 feet of the point of impact prior to the accident? If yes, state:

(a)     Nature of distraction;

(b)     How long this distraction lasted.

**RESPONSE:** No.

20. Were there any obstructions to your view of the Plaintiff where the accident occurred or prior to the time of the accident? If yes, state:

   (a) Whether your view of the Plaintiff was obstructed;

   (b) Distance in feet and geographical direction of impact where such obstruction occurred;

   (c) Description of the obstruction;

   (d) What precautions, if any, you took to obtain a better view, in reference to such obstructions prior to the accident.

   **RESPONSE:** At the point Mr. Bard decided he could safely execute the left turn onto Montchanin, there were no obstructions to his view, and there was no traffic coming in either direction.

21. Was your vision obstructed in any way by anything on or in your vehicle? If yes, state the nature of the obstruction and its location.

   **RESPONSE:** No.

22. Was your vision obstructed by any artificial light or sunlight? If yes, state which one and from what direction the light was coming.

   **RESPONSE:** No.

23. Did you hear the motorcycle before impact?

   (a) What was the distance of the motorcycle when you first heard it?

   **RESPONSE:** No.

24. Did you apply your brakes immediately prior to the point of impact? If yes, state:

   (a) The distance in feet from the front of your vehicle to the vehicle owned, operated or occupied by the plaintiff(s);

   (b) The distance in feet from the front of your vehicle to the point of impact.

   **RESPONSE:** Yes. Mark Bard stopped his van when he first observed plaintiff's decedent on the stone bridge.

25.  State the time, in seconds or fractions thereof, that elapsed from when you realized there might be an accident until you applied the brake pedal.

**RESPONSE:** Mr. Bard stopped his van before he thought there might be an accident.

26.  Did your vehicle leave any skid marks? If so, state the length and direction of your skid marks.

**RESPONSE:** No. Mr. Bard is unaware of any skid marks caused by brake application of the package car.

27.  State whether such skid marks were made:

(a)  Solely by the front wheels;

(b)  Solely by the rear wheels;

(c)  By both front and rear wheels.

**RESPONSE:** Not applicable.

28.  State whether at the moment of impact you:

(a)  Had your lights on;

**RESPONSE**: Yes.

(b)  Had your windshield wipers on;

**RESPONSE**: No.

(c)  Had your turn signal light on;

**RESPONSE**: Yes. Mr. Bard was in the process of completing a left turn at the time of the accident and he had his left turn signal on.

(d)  Gave an arm turn signal, and/or;

**RESPONSE**: No.

(e)    Were moving or stopped.

**RESPONSE:** Stopped.

29.    Describe the movement, direction and speed of your vehicle at the time of impact.

**RESPONSE:** Stopped.

30.    State the parts of your vehicle that came into contact with the Plaintiff at the time of the impact.

**RESPONSE:** Mark Bard objects to this interrogatory because it is vague and unintelligible and assumes a false set of facts. Mr. Bard's vehicle did not come into contact with plaintiff's decedent at the time of impact, rather plaintiff's decedent hit Mr. Bard's vehicle. Without waiving said objection, plaintiff's decedent hit the front driver's side hood of the package car.

31.    Describe all physical evidence and its location which you observed at the scene of the accident after the collision, including, but not limited to, skidmarks, dirt, debris, etc.

**RESPONSE:** The point of rest of the motorcycle was four to six feet from the left front tire of the package car on Montchanin Road. The point of rest of the body of plaintiff's decedent was perpendicular to the package car front left tire. There was a dirt mark on Montchanin Rd at the location of the point of impact. There was a light skid mark left by the front tire of plaintiff's decedent's motorcycle.

32.    Did you take any drug, narcotic, sedative, tranquilizer, medication, or alcoholic beverage within the twenty-four hour period proceeding [sic] the accident? If yes, state:

(a)    what was taken and in what amount.

**RESPONSE:** No.

33.    Were you suffering from or affected by any ailment, disease, pathological disorders, or, other medical conditions at the time of the accident? If yes, state the nature and degree of such conditions, when and by whom you were last treated for such condition(s) prior to the accident.

**RESPONSE:** Mark Bard objects to this interrogatory as it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objection, no.

34. If you were required to have a periodic physical examination or mental examination for any reason, including, employment and/or federal, state or local regulations, state:

   (a)   by whom and/or what regulation requires this (these) examination(s);

   **RESPONSE:** Physical examination as required by the Delaware Department of Transportation

   (b)   how frequently required;

   **RESPONSE:** Every two years

   (c)   name and address of the doctor or other medical personnel performing such examination(s);

   **RESPONSE:** See Medical Examiner's Certificates, UPS 0020-0026.

   (d)   date of last examination(s) prior to the accident;

   **RESPONSE:** Upon information and belief, November, 2002.

   (e)   results of such examination(s).

   **RESPONSE:** Passed.

35. State the name and address of the doctor or other medical personnel who last treated you or examined you for any reason whatsoever, prior to the happening of the accident.

   **RESPONSE:** Mark Bard objects to this interrogatory as it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence. Without waiving said objection, see response to interrogatory no. 34(c).

36. At the time of the accident, did you own a pair of eyeglasses or other corrective lenses? If yes, state:

   **RESPONSE:** Yes

(a)   were you wearing them when the accident occurred;

**RESPONSE:** No.

(b)   if your answer to part (a) above is no, explain why you were not wearing them.

**RESPONSE:** Bifocals for purposes of reading only.

37.   State where you had been and what you were doing for the eight hours preceding the accident.

(a)   Give the names and addresses of each person(s) in whose company you were during the eight hours preceding the accident.

**RESPONSE:** Working delivering packages.

38.   Have you or anyone on your behalf conducted any investigations of the accident which is the subject matter of the complaint? If the answer is in the affirmative, please state:

(a)   each person, and the employer of such person, who conducted any investigation;

(b)   the dates of the investigations;

(c)   all notes, reports or other documents prepared during or as a result of the investigations and the identity of the persons who have possession thereof.

**RESPONSE:** Mark Bard objects to this interrogatory as it seeks information protected from disclosure by Attorney-Client Privilege, as attorney-work product and work-product produced in anticipation of litigation. Subject to and without waiving said objection, Mark Bard states that defendants and their authorized agents are in the process of conducting an ongoing investigation of plaintiffs' claims and all non-privileged, relevant information arising from said investigations will be produced.

39.   Have you given any statements, either oral or written, concerning this action or its subject matter? If the answer is in the affirmative, please state:

(a)   each person to whom a statement was given;

(b)    when and where each statement was given;

(c)    any person who has custody of any such statements that were reduced to writing or otherwise recorded.

**RESPONSE:** Mark Bard objects to this interrogatory as it seeks information protected from disclosure by Attorney-Client Privilege, as attorney-work product and work-product produced in anticipation of litigation. Without waiving said objection, other than the privileged written statements previously disclosed in the Initial Disclosures, Mr. Bard gave a verbal account of the accident to Corporal Jeffrey Weaver at the scene of the accident.

40.    State whether you are covered by any type of insurance, including any excess or umbrella insurance in connection with this accident. If the answer is in the affirmative, state the following with respect to each policy:

(a)    the name of the insurance carrier which issued each policy of insurance;

(b)    the name insured under each policy and the policy number;

(c)    the type of each policy and the effective dates;

(d)    the amount of coverage provided for injury to each person, for each occurrence, and in the aggregate for each policy;

(e)    each exclusion, if any, in the policy which is applicable to any claim thereunder and the reasons why you or the company claims the exclusion is applicable.

**RESPONSE:** UPS. Liberty Mutual Insurance Company, Policy # AS2C21004175334—sufficient to cover a judgment in this matter.

41.    To your knowledge, was any person involved in this accident, including answering defendant, convicted of any crime, motor vehicle code violation, or summary offense, arising out of this accident? If so, state:

(a)    the date of such conviction;

(b)    the nature of the proceeding which resulted in a conviction;

(c)    the location of said proceeding and the person or persons presiding;

(d)    the court term and number, if applicable, of such proceeding;

(e)    the identities and addresses of all persons testifying at said proceeding;

(f)    the identities of any attorneys or legal representatives present at said proceeding;

(g)    the penalty imposed as a result of said conviction.

**RESPONSE:** With regard to Mr. Bard, no. With regard to plaintiff's decedent, investigation is ongoing. By way of further response, plaintiff's decedent's excessive rate of speed was determined to be a contributing factor to the accident. See Delaware Police Accident Report.

42.    At the time the collision in question occurred, were you operating in accordance with the instructions given to you by dispatch or operational personnel or United Parcel Service, Inc.? If so, please state:

(a)    the date and approximate time you received the instructions and your location at that time;

(b)    the verbal instructions that you received and if they were received *via* the telephone or in person;

(c)    the identity of the person giving you such verbal instructions;

(d)    were you given any documents at that time? If so, the identity of the person giving you the document(s) and a description or the title of each such document you received.

**RESPONSE:** Mr. Bard was operating a routine delivery pattern route.

43.    Did you personally perform any pre-trip inspection, maintenance task, or replacement of parts and accessories on the UPS truck during the 48 hours before the collision occurred? If so, please state the date, approximate time, and location where you conducted such activities, inclusive of a description of the problems you encountered and the actions you took. If a pre-trip inspection was performed, please identify and attach copies of any documents which evidence such pre-trip instructions. If maintenance task or replacement parts took place, please identify and attach copies of any documents which evidence such action.

**RESPONSE:** Yes. Mr. Bard performed a pre-trip inspection of the package car at the Ruthar Drive Newark facility at approximately 8:30am on the morning of the accident as well as the day before, just as he does each and every day. No maintenance was required on either day. Documents will be provided.

15

44.   In the last ten years, have you received any traffic citations for moving violations from any local, state or federal enforcement officers?  If so, please state:

   (a)   the approximate date, time and location of the issuance of each citation;

   (b)   the type of violation(s) that were listed on each citation;

   (c)   the law enforcement agency issuing the citation(s), inclusive of the name of their employer (name of city, county, state or federal enforcement agency);

   (d)   the identity of the court each citation was filed in indicating the city, county or other location to the best of your knowledge;

   (e)   the penalty imposed upon you for each violation.

   **RESPONSE:** Mark Bard objects to this interrogatory as it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

45.   Were you ever admonished, warned, fined or in any way disciplined by any of your employers in the past ten (10) years?  If so, please state:

   (a)   why were you disciplined?

   (b)   when were you disciplined?

   (c)   the form the discipline took;

   (d)   identify the person administering the discipline.

   **RESPONSE:** Mark Bard objects to this interrogatory as it seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

46.   State whether any other investigatory or other reports were prepared, compiled, submitted or made on behalf of the Defendant in the regular course of business or as a result of this accident for either private use or for any federal, state or industry safety or regulatory organization.  If so, please identify said report.

   **RESPONSE:** Mark Bard objects to this interrogatory as it seeks information protected by the Attorney-Client Privilege, and Work Product Doctrine.  Without waiving said objection, an investigation has been conducted for UPS by, through