**In The Matter Of:**

*Vascek   v.*
*UPS  &  Bard*

RECEIVED
SEP 19 2005

---

*CPL. Jeffrey Weaver*
Vol. 2, August 22, 2005

---

*Corbett & Associates*
1400 N. French Street
P.O. Box 25085
Wilmington, DE  USA  19899
(302) 571-0510    FAX: (302) 571-1321

Original File 050822A.ASC, 247 Pages
Min-U-Script® File ID: 3316808421

**Word Index included with this Min-U-Script®**

**1—01:39:51  24—01:41:03                                  Page 558**

[1] MS. RISK: That's all the questions
[2] that I have.
[3] BY MR. van der VEEN:
[4]  Q: Are you saying that you missed the
[5] motorcycle — a skid mark on the motorcycle because
[6] it was getting dark?
[7]  A: What I'm saying is if there was a faint
[8] skid mark at that scene, with the limits of light and
[9] what was there, it's possible that it wasn't
[10] detected.
[11]  Q: Well, what time did you get there?
[12]  A: Little after 5:00.
[13]  Q: Do you note anywhere in any of your
[14] reports or any of your notes or anywhere that you had
[15] a problem with the lighting?
[16] MS. RISK: Objection; argumentative.
[17] BY MR. van der VEEN:
[18]  Q: Did you note anywhere that you had a
[19] problem with the lighting? I'm not arguing with you.
[20] Did you note it?
[21]  A: No.
[22] MS. RISK: Objection. Noting the
[23] plaintiff's attorney shouting, for the record.
[24] BY MR. van der VEEN:

**1—01:41:04  24—01:41:45                                  Page 559**

[1]  Q: As you sit here today, do you have any
[2] recollection of having a problem with the lighting?
[3]  A: No.
[4]  Q: As you sit here today, do you believe that
[5] there was a skid mark there that you missed?
[6]  A: I'm saying that I didn't see any skid
[7] marks.
[8]     Her question was, is it possible there
[9] was a faint mark that I didn't detect?
[10]    And I'm saying it's possible.
[11]  Q: Anything's possible?
[12]  A: Absolutely.
[13]  Q: Do you think that there's — do you think
[14] that you missed anything?
[15]  A: I don't think I did.
[16]  Q: Do you think that the lighting caused you
[17] any difficulty in being able to detect a faint skid
[18] mark?
[19]  A: It's very possible. We have two
[20] investigators at the scene.
[21]  Q: Right.
[22]  A: Sergeant Cox didn't detect anything, nor
[23] did I. There's heavy foliage. It's on a rural area
[24] that's dark, as in under good conditions, is it

**1—01:41:47  24—01:42:15                                  Page 560**

[1] possible there's a mark there that I didn't pick up?
[2] Absolutely. I don't know what more you're asking.
[3] As far as I'm — I'm answering as honestly as I can
[4] answer.
[5]  Q: Did Mr. Bard ever tell you that he found a
[6] faint mark?
[7] MS. RISK: Objection.
[8] THE WITNESS: No.
[9] MS. RISK: Objection; asked and
[10] answered.
[11] BY MR. van der VEEN:
[12]  Q: Did you ask him about — did he tell
[13] you — he did tell you he saw a skid mark regarding
[14] the van?
[15]  A: Did I ask him?
[16]  Q: Did he tell you?
[17]  A: I don't recall him telling me.
[18] MS. RISK: Objection.
[19] THE WITNESS: No. It's not marked
[20] anywhere in the evidence. I would have — it would
[21] have been written in my notes if he told me.
[22] BY MR. van der VEEN:
[23]  Q: He says he told you.
[24] MS. RISK: Objection;

**1—01:42:15  24—01:43:06                                  Page 561**

[1] misrepresentation of the testimony and speculation.
[2] BY MR. van der VEEN:
[3]  Q: Did he tell you that?
[4]  A: What I testified to at the previous
[5] deposition and today is what I was told the day that
[6] I interviewed the individuals that I have said that I
[7] have interviewed them. The notes that I have written
[8] and referred to — and it is confirmed or conveyed
[9] into the report — are what was told to me at that
[10] time.
[11]    He did not tell me. I have no
[12] recollection of any comments about any skid mark,
[13] because it's not in the notes. I don't have any
[14] personal recollection of it.
[15]  Q: Let me back up here.
[16]  A: If he changed his story or has made
[17] comments subsequently since, I'm only testifying to
[18] what this — was done during the course of the
[19] investigation during the times, of the dates I say I
[20] interviewed whom, what they said.
[21]  Q: Trooper, let me get this point down so
[22] it's rock-solid clear. Okay?
[23]    You got on the scene. It was
[24] daylight; right?

```
                1—01:43:08  24—01:43:44          Page 562
```
[1]  A: Yes.
[2]  Q: Plenty of light for you; right?
[3]  A: Yes.
[4]  Q: You didn't ask for a flashlight?
[5]  A: No.
[6]  Q: Could have; right? Correct? You could
[7]  have had illumination if you needed it?
[8]  MS. RISK: Objection; argumentative,
[9]  harassing tone of voice.
[10] BY MR. van der VEEN:
[11] Q: You could have had artificial illumination
[12] if you needed it; correct?
[13] A: That's correct.
[14] Q: And you didn't feel you needed it; right?
[15] A: That's correct.
[16] Q: And you looked for a skid mark from the
[17] bike; correct?
[18] A: That's correct.
[19] Q: And you looked carefully, didn't you?
[20] A: That's correct.
[21] Q: And you didn't find one?
[22] A: And that is correct.
[23] MR. van der VEEN: Okay. Now, I have
[24] a series of questions for you. Actually, I've got

```
                1—01:43:46  24—01:50:12          Page 563
```
[1]  a — based on the questions by counsel, I have a lot
[2]  of questions for you. So the question is, what do we
[3]  want to do with the witness out there, just make him
[4]  sit and wait or reschedule him?
[5]  MS. RISK: Let's go off the record.
[6]  (Discussion held off the record.)
[7]  BY MR. van der VEEN:
[8]  Q: I asked you at our last — after a series
[9]  of long questions where we really went through the
[10] photographs and we went through the skid marks and we
[11] went through your report and we went through witness
[12] statements, I asked you a series of questions
[13] regarding your opinions within a reasonable degree of
[14] accident reconstruction scientific certainty; do you
[15] recall those questions?
[16] A: Basically, yes.
[17] Q: And when I asked you, Are any of the
[18] opinions here in your report based on — are given
[19] within a reasonable degree of accident reconstruction
[20] scientific certainty, you said that, no, they were
[21] not. And we were talking in terms of expert
[22] qualifications. Do you remember that?
[23] A: No.
[24] Q: Okay. Then I'm going to need to have your

```
                1—01:50:15  24—01:54:41          Page 564
```
[1]  deposition printed out so that you can read it; okay?
[2]  A: Okay.
[3]  (Discussion held off the record.)
[4]  BY MR. van der VEEN:
[5]  Q: With respect to your report, looking on
[6]  page 17, the line that both I and Miss Risk have
[7]  asked you about now, the line that reads, It is
[8]  necessary, up at the top, for eastbound traveling
[9]  motorists to move forward towards Montchanin Road to
[10] visibly see north- and southbound traveling motorists
[11] that are approaching the intersection; do you see
[12] that?
[13] A: Yes, sir.
[14] Q: To move forward of what?
[15] A: To move forward of the stop sign.
[16] Q: And then they're supposed to do what under
[17] the law?
[18] A: Stop.
[19] Q: Did this driver — did Mr. Bard do that?
[20] A: Not in my understanding that he did, no.
[21] Q: He didn't tell you he did; right?
[22] A: Correct.
[23] Q: And the witness told you that — the
[24] independent witness told you that he did not?

```
                1—01:54:44  24—01:55:31          Page 565
```
[1]  A: Correct.
[2]  Q: Okay. So he has violated the statute, has
[3]  he not?
[4]  MS. RISK: Objection to form.
[5]  Objection; calls for opinion.
[6]  THE WITNESS: Yes.
[7]  BY MR. van der VEEN:
[8]  Q: Okay. Now knowing what he did and now
[9]  knowing what the statute says, would you issue him a
[10] citation?
[11] A: No.
[12] Q: Why not?
[13] A: Because I fall under the Attorney
[14] General's office.
[15] Q: Would the Attorney General then file a
[16] citation?
[17] A: I don't know. You'd have to ask them.
[18] MS. RISK: For the record, counsel's
[19] holding up a document that he's previously shown the
[20] witness that purports to be a copy of Delaware Rules
[21] of the Road.
[22] BY MR. van der VEEN:
[23] Q: The statute that we've gone over, you
[24] understand that to be the statute of duties at a stop

1—01:55:33   24—01:56:09                                    Page 566

[1] sign?
[2]   **A:** Yes, sir.
[3]   **Q:** Did Mr. Bard follow his duties at the stop
[4] sign?
[5]   **MS. RISK:** Objection.
[6]   **THE WITNESS:** Under those, no.
[7] BY MR. van der VEEN:
[8]   **Q:** Under Delaware law?
[9]   **MR. van der VEEN:** Objection.
[10]  **THE WITNESS:** No.
[11] BY MR. van der VEEN:
[12]  **Q:** Had you witnessed the manner in which he
[13] stopped or rather the manner in which he didn't stop
[14] where he was supposed to at this intersection, would
[15] you have ticketed him?
[16]  **MS. RISK:** Objection to form.
[17]  **THE WITNESS:** Under the circumstances
[18] of this crash, motorcycle coming from the north to
[19] the south at a high rate of speed —
[20] BY MR. van der VEEN:
[21]  **Q:** No, no, no, no.
[22]  **A:** — or just him coming out?
[23]  **Q:** Yeah.
[24]  **A:** Would I?

1—01:56:10   24—01:56:55                                    Page 567

[1]   **Q:** Yeah.
[2]   **A:** No.
[3]   **Q:** And the reason why?
[4]   **A:** If it didn't constitute a hazard to
[5] anyone, if there was no one else there and he moved
[6] slowly, as he did, entered the intersection. Had he
[7] just gone through the stop sign, yeah, that would
[8] have been not an issue.
[9]   **Q:** Okay.
[10]  **A:** But he stopped. You're asking me if he
[11] would have continued to go through and didn't stop,
[12] would I give him a ticket? Knowing — if I was
[13] directly behind him, if I was Mr. Seiffert and he
[14] stopped and then moved slowly forward and moved out
[15] and there was no crash, no, I wouldn't write him —
[16] written him a ticket.
[17]  **Q:** Okay. So when you violate a statute, a
[18] traffic statute, you don't give a ticket for it?
[19]  **MS. RISK:** Objection to form.
[20]  **THE WITNESS:** Supposed to.
[21] BY MR. van der VEEN:
[22]  **Q:** But you just wouldn't?
[23]  **A:** It's the discretion of the officer.
[24]  **Q:** What's the discretion of the officer?

1—01:56:57   24—01:57:42                                    Page 568

[1]   **A:** As I previously stated, if he blew through
[2] that stop sign, yes, he would have been stopped and
[3] cited if I was the trooper that was behind him.
[4]   But he did stop. If I was behind him
[5] and he did stop and he moved slowly, as he described
[6] and the independent witness described, and nothing's
[7] coming and he slowly enters that intersection and no
[8] crash occurs, no, I'm not going to stop him and give
[9] a ticket.
[10]  **Q:** How do you know nothing's coming if you
[11] aren't looking to the left?
[12]  **MS. RISK:** Objection to form.
[13] BY MR. van der VEEN:
[14]  **Q:** How do you know nothing's coming if you
[15] aren't in a position in the roadway where you can see
[16] from the left?
[17]  **MS. RISK:** Objection to counsel's —
[18]  **THE WITNESS:** We're concluding this.
[19]  **MS. RISK:** Excuse me. Objection to
[20] counsel's not allowing the witness to answer —
[21]  **THE WITNESS:** Because I am not going
[22] to sit and continue to be directed at the questions
[23] in which you are attacking me personally as an
[24] investigator — no, don't wave your hands or — I've

1—01:57:45   24—01:58:41                                    Page 569

[1] been more than professional through this whole
[2] deposition.
[3]   I'm an investigator that did an
[4] investigation. You've got months and years or
[5] whatever to minutely pick things that we do and do
[6] whatever you need to do and ask me the questions.
[7] I'm asking (sic) the questions from the beginning of
[8] this to the ending of this and the integrity in which
[9] I did and conducted this.
[10]  You asked me earlier whether or not we
[11] did or did not miss a skid mark. It's possible, and
[12] I answered that. Yes, it's possible we missed it.
[13]  But your attacks at me are putting me
[14] on the defensive, and I'm tired of it. I have had a
[15] long weekend, as I explained to you off the record,
[16] that we've had multiple departmentals; we've had
[17] fatals that we've been out on. And I have not had a
[18] lot of sleep in the last week.
[19]  And for me to come in here early,
[20] voluntarily, to be subjected to your demeanor and
[21] your attacks of me, I would much rather conclude this
[22] and come back another day and start fresh; because I
[23] don't feel it's fair to me as an investigator, of all
[24] that I've done in this past week, to be continually

1—01:58:44   24—01:59:34                          Page 570

[1] acted as if I'm the bad guy here. And that's how I
[2] feel.
[3]     Now, this counselor has not attacked
[4] me or come at me in the direction at which you have
[5] in the previous as well as this one. And I just
[6] honestly don't see this going anywhere in a positive
[7] direction.
[8]     I have told you before, I had a
[9] doctor's appointment for my son during the first
[10] deposition, which I canceled and I departed from
[11] here, which he didn't make. And I now — I have
[12] informed you before, this is going on and on and on.
[13]     I'm not saying I won't cooperate with
[14] you. I'm not saying I won't answer your questions.
[15] But considering what I've been through this past week
[16] and my son now has an appointment, I don't know what
[17] else — I have a life beyond the division.
[18]     And I've cooperated beyond what I
[19] think I can give you with your questioning. But I
[20] don't feel it's fair professionally for you to come
[21] at me as you're attacking me.
[22] BY MR. van der VEEN:
[23]   Q: Are you done?
[24]   MS. RISK: For the record —

1—01:59:35   24—01:59:53                          Page 571

[1]   THE WITNESS: Yes.
[2] BY MR. van der VEEN:
[3]   Q: Are you done? First of all —
[4]   MS. RISK: — counsel — for the
[5] record.
[6]   MR. van der VEEN: No. First of
[7] all —
[8]   MS. RISK: Excuse me. Please don't
[9] interrupt me, counsel. For the record —
[10]   MR. van der VEEN: No. We're in
[11] the — no. You'll have your chance to —
[12]   MS. RISK: For the record I would
[13] like —
[14]   MR. van der VEEN: No. I'm not making
[15] any records.
[16]   MS. RISK: Counsel for UPS would like
[17] to — and Mr. Bard — would like to support and agree
[18] with everything, all the observations that —
[19]   MR. van der VEEN: Mr. Bard isn't
[20] here.
[21]   MS. RISK: — Corporal Weaver has
[22] made. Thank you.
[23] BY MR. van der VEEN:
[24]   Q: Corporal Weaver, first of all, I wasn't

1—01:59:55   24—02:00:29                          Page 572

[1] the one who asked you, Is it possible you missed the
[2] skid mark? Counsel for UPS, who you just endorsed as
[3] being a wonderful person, did.
[4]   MS. RISK: Oh, objection; harassing,
[5] argumentative. And you know what? We're going to
[6] call the Judge.
[7] BY MR. van der VEEN:
[8]   Q: Do you remember that?
[9]   MS. RISK: Please stop.
[10] BY MR. van der VEEN:
[11]   Q: Do you remember that?
[12]   No. Don't stop.
[13]   MS. RISK: Stop asking the witness
[14] questions. Stop.
[15]   MR. van der VEEN: No. I'm going to
[16] ask the witness questions.
[17]   MS. RISK: Stop asking the witness
[18] questions.
[19]   (Ms. Risk left the room.)
[20]   THE WITNESS: The witness is leaving.
[21]   MR. van der VEEN: Wait. Hang on.
[22] Don't leave. You told me that we had until you had
[23] to leave for your son.
[24]   THE WITNESS: I'm not answering

1—02:00:29   24—02:01:13                          Page 573

[1] questions while the other counselor's not here.
[2]   MR. van der VEEN: Okay. Well, then
[3] let me ask you about what your schedule is to come
[4] back and answer questions.
[5]   THE WITNESS: I will have to get back
[6] to you with my schedule. I don't even have my
[7] planner with me. I don't know what I have and what I
[8] don't have.
[9]   MR. van der VEEN: Okay. Can you
[10] please sit for — I don't want to end on this note.
[11] Would you please sit and relax.
[12]   THE WITNESS: I'm relaxed.
[13]   MR. van der VEEN: Okay. I do not
[14] have nor have I in any way ever in this deposition
[15] tried to attack you personally at all. What I've
[16] really been trying to do is hone in on the things
[17] that you're sure about and the things that you aren't
[18] sure about. I've tried to hone in on the things that
[19] I've seen that are incorrect in the report and things
[20] that I think are correct in the report.
[21]   (Ms. Risk entered the room.)
[22]   MS. RISK: Excuse me. May I ask that
[23] no more go on while I'm out of the room.
[24]   MR. van der VEEN: No.

**Page 574**
1—02:01:13   24—02:01:59

[1] **MS. RISK:** I have Judge Robinson that
[2] I'm going to get on the phone.
[3] **MR. van der VEEN:** So what? So what?
[4] You don't —
[5] **MS. RISK:** Stop.
[6] **MR. van der VEEN:** — leave in the
[7] middle of my deposition.
[8] **MS. RISK:** I didn't walk out. I asked
[9] you politely to please stop because I would like to
[10] call the judge. I do not believe that under the
[11] Rules, under Delaware civility and the statement of
[12] lawyers' conduct, that — harassing a witness is
[13] definitely a reason to call the judge. In fact, it's
[14] a reason to get your pro hac revoked.
[15] **MR. van der VEEN:** Go ahead.
[16] No, Trooper, I have not been meaning
[17] to harass you in any way.
[18] **MS. RISK:** I am going to ask again. I
[19] have to leave the room to talk on the phone with the
[20] Judge.
[21] **MR. van der VEEN:** Use the phone here.
[22] **MS. RISK:** I have the other line going
[23] out in the office. I would ask that you please stop
[24] asking questions. Please, Mr. van der Veen, I'm

**Page 575**
1—02:02:03   24—02:02:41

[1] asking you as a reasonable human being —
[2] **MR. van der VEEN:** No.
[3] **MS. RISK:** — to act civilly and stop
[4] asking question.
[5] **MR. van der VEEN:** Don't leave the
[6] room. I'm not asking questions. I'm talking to the
[7] trooper.
[8] **MS. RISK:** Can I ask you that —
[9] **MR. van der VEEN:** Don't leave the
[10] room. My — staff can get the phone on in here.
[11] (Ms. Risk left the room.)
[12] **MS. RISK:** Can I have a line on this
[13] phone in here? Thank you.
[14] **MR. van der VEEN:** I'm not in any way
[15] trying to harass you. I'm trying to get to the
[16] bottom of this. I'm trying to ask you questions.
[17] That's all I'm trying to do.
[18] (Ms. Risk entered the room.)
[19] **MS. RISK:** Let the record reflect that
[20] counsel has just walked back into the room and is
[21] trying to call the Judge but counsel — plaintiff's
[22] counsel will not cooperate and stop speaking.
[23] **MR. van der VEEN:** Trooper, is it your
[24] opinion that I've been rude to you?

**Page 576**
1—02:02:44   24—02:03:35

[1] **THE WITNESS:** Your aggressiveness —
[2] there's times where I personally feel that you were
[3] attacking me personally of something that I did or
[4] didn't do or "could've/should've" done. I'm here to
[5] discuss what happened, what I know. And the manner
[6] in which you're asking those questions can be done
[7] without you raising your voice or feeling on a
[8] personal defense that you're coming at me
[9] individually.
[10] And that — and the escalation of the
[11] voice and the tone of your voice — and, like I said,
[12] with everything I've been through this past week, out
[13] of fairness to me, I don't want to sit here and give
[14] an incorrect answer because I'm tired or I'm now
[15] starting to get emotionally upset because I'm feeling
[16] personally attacked of what I did as a Delaware State
[17] trooper, as an investigator.
[18] **MR. van der VEEN:** To me, that's fair.
[19] To me, that's fair. Okay? And we can do that —
[20] **MS. RISK:** Counsel, this telephone
[21] does not work. I'm trying to get your attention.
[22] The telephone in the conference room does not work.
[23] Do not wave me off. I am following —
[24] **MR. van der VEEN:** Stop interrupting

**Page 577**
1—02:03:36   24—02:04:06

[1] me.
[2] **MS. RISK:** I didn't.
[3] **MR. van der VEEN:** Stop interrupting
[4] me.
[5] **MS. RISK:** I'm trying to speak to you.
[6] I'm going to call the Judge.
[7] **MR. van der VEEN:** I'm speaking to the
[8] trooper right now. Fine. Call the Judge.
[9] **MS. RISK:** Please stop.
[10] **MR. van der VEEN:** Trooper, do you
[11] understand that I'm not trying to — do you accept my
[12] representation to you that I'm not trying to attack
[13] you personally.
[14] **MS. RISK:** For the record, counselor
[15] is leaving the room, and Mr. van der Veen will not
[16] stop speaking while I go to try and get the Judge on
[17] the phone. He will not cooperate.
[18] **MR. van der VEEN:** Use your cell
[19] phone.
[20] **MS. RISK:** And he will not cooperate.
[21] (Ms. Risk left the room.)
[22] **MR. van der VEEN:** Trooper, do you
[23] understand that I'm really not attacking you
[24] personally in any way? The job that you do, the

```
                1—02:04:11  24—02:05:07              Page 578
[1] credentials that you have, those are all respected by
[2] me very much, that the point of this is just for me
[3] to ask questions. I didn't think in the hours that
[4] I've been asking you I've raised my voice at you. If
[5] I have raised my voice at you, accept my apology;
[6] okay?
[7]     THE WITNESS: Understood.
[8]     (Ms. Risk entered the room.)
[9]     MR. van der VEEN: And I understand
[10] that you're tired, and I understand that you're
[11] emotional so that we will reconvene this. And I
[12] really have a very short period of time with you. I
[13] have about another 15, 20, 25 minutes of questions
[14] for you. Okay? And we will reconvene it at a time
[15] that's convenient for you; is that fair?
[16]     THE WITNESS: Yes, sir.
[17]     MR. van der VEEN: Okay. Thank you.
[18]     MS. RISK: In all due respect for the
[19] officer, I would request at our reconvention of time,
[20] that counsel be limited in the time of his questions
[21] to the time that he's represented to Corporal Weaver
[22] that he has, which is approximately 15 to 25 minutes.
[23] Would you agree to that, counsel?
[24]     MR. van der VEEN: No, I'm not. I
```

```
                1—02:05:07  24—02:08:10              Page 579
[1] don't know what his answers are going to be, quite
[2] frankly. But I will keep it as short and as brief as
[3] I can; okay? I don't see it going over half an hour.
[4] Maybe it will. Maybe it will. Maybe it will go 33
[5] minutes. I just don't know. But I'm going — I'm
[6] not going to waste your time. I'll be as efficient
[7] as I can with my questions; is that fair?
[8]     THE WITNESS: I understand.
[9]     MR. van der VEEN: Okay. Thank you.
[10]     THE WITNESS: Can I get you to make
[11] copies of those so I can take those with me, please,
[12] and put those back in the file — copies.
[13]     MR. van der VEEN: Yeah.
[14]     (Discussion held off the record.)
[15]     MS. RISK: Corporal Weaver, just
[16] before you leave, I just want to remind you that
[17] because you are still under deposition and an oath,
[18] that it's your duty not to speak to anybody,
[19] including Mr. van der Veen or anyone from his office
[20] or myself or anyone from my office.
[21]     THE WITNESS: Understood.
[22]     MS. RISK: Do you understand that?
[23]     THE WITNESS: Not a problem.
[24]     MS. RISK: Except with regard to
```

```
                1—02:08:11  5—02:08:57              Page 580
[1] rescheduling your deposition.
[2]     THE WITNESS: Not a problem.
[3] Understood.
[4]     (Discussion held off the record.)
[5]     (Deposition concluded at 2:08 p.m.)
[6]              INDEX
[7] BY MR. van der VEEN:    336
    BY MS. RISK:            393
[8] BY MR. van der VEEN:    558
[9]              EXHIBITS
[10] NAME       DESCRIPTION              PAGE
[11] Weaver 10  Color Accident Scene Sketch   336
[12] Weaver 11  Black-and-White Copy of Exhibit  336
             Weaver 10
[13]
     Weaver 12  Handwritten Notes           336
```

```
                                                    Page 581
[1]              CERTIFICATION
[4]     I, ADAM D. MILLER, Registered
[5] Professional Reporter, certify that the foregoing is
[6] a true and accurate transcript of the foregoing
[7] deposition, that the witness was first sworn by me at
[8] the time, place and on the date herein before set
[9] forth.
[10]     I further certify that I am neither
[11] attorney nor counsel for, not related to nor employed
[12] by any of the parties to the action in which this
[13] deposition was taken; further, that I am not a
[14] relative or employee of any attorney or counsel
[15] employed in this case, nor am I financially
[16] interested in this action.
[20] Adam D. Miller
     Registered Professional Reporter, Notary Public,
[21] and Certified Shorthand Reporter of the State of
     Delaware #109-RPR (Exp. 01-31-2008)
```