IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| HEIDI VASCEK, individually and as Administratrix of the ESTATE OF JOHN VASCEK, JR., Plaintiffs, vs. UNITED PARCEL SERVICE, INC. and MARK BARD, Defendants. | : : : : : : : : : : : : | C.A. No. 04-1538 |
|---|---|---|

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S OMNIBUS MOTION TO:
(1) COMPEL INSPECTION OF THE SUBJECT PACKAGE CAR;
(2) COMPEL DEFENDANT MARK BARD TO SUBMIT TO A PHYSICAL EXAMINATION; (3) COMPEL ANSWERS TO INTERROGATORIES; AND
(4) COMPEL REQUESTS FOR PRODUCTION OF DOCUMENTS**

I.  INTRODUCTION

Plaintiff has filed an "Omnibus Motion" consisting of four separate and unrelated motions, which not only inappropriately seek relief to which Plaintiff is not entitled, but also attempts to disguise the fact that the four separate Motions exceed this Court's Order that each party shall be limited to two pre-trial motions. Plaintiff's counsel has already filed a Motion to Compel Mark Bard's Responses to Interrogatories, which was denied by this Court, and in order to circumvent this Court's Order, he has combined four independent and separate Motions into one. As such, plaintiff's Omnibus Motion should be denied on procedural grounds. Should this Court address the merits of the Omnibus Motion, plaintiff's individual Motions should be denied for the following reasons:

1

First, plaintiff seeks to compel an inspection of the UPS package car pursuant to F.R.C.P. 34. Of most significance, plaintiff fails to inform this Court that plaintiff's attorney and consulting experts <u>have already inspected the package car</u>. After UPS agreed to produce the package car for a second inspection, plaintiff's counsel engaged in a pattern of deceitful tactics designed to prevent defense counsel from learning that, rather than "inspecting" the car as originally claimed (and set forth in plaintiff's protocol), plaintiff's counsel actually intended to conduct an accident reconstruction using UPS's property. Plaintiff's counsel omitted significant details about the protocol for the inspection until the eve of the inspection. For these reasons, to include plaintiff's misrepresentative tactics, combined with the fact that the proposed accident reconstruction goes beyond the bounds of permissible inspection pursuant to Rule 34, as well as the fact that plaintiff's counsel and experts have already inspected the package car, UPS cancelled the agreed-to inspection. As such, plaintiff should be precluded from conducting an accident reconstruction and <u>second</u> inspection of the package car.

Secondly, plaintiff seeks to compel defendant Mark Bard to submit to independent medical examinations by an audiologist and ophthalmologist. As a preliminary factual matter, Mark Bard's visual and audio acuity are <u>not</u>, and have not been, the matter in controversy in this case. In fact, it is undisputed that Mr. Bard passed a federally mandated independent medical examination, which included visual acuity and hearing testing, every year for at least ten years prior to the accident, including an annual physical examination conducted less than two weeks after the accident. Further, Supreme Court precedent establishes that Mr. Bard's physical condition is not <u>the matter in controversy</u> in this case, as required for a medical exam to be ordered pursuant to F.R.C.P. 35. Moreover, plaintiff has at her disposal multiple alternatives for establishing Mr. Bard's condition at the time of the accident, including the identity of Mr. Bard's

healthcare providers and his eye care providers. Plaintiff has ignored these alternatives and instead filed this frivolous Motion to compel a medical examination intended only to harass, annoy and embarrass Mr. Bard.

Third, plaintiff seeks to compel certain responses to Interrogatories from UPS. Most of plaintiff's contentions regarding UPS's responses to Interrogatories fail to meet plaintiff's burden of proof for compelling responses, ignore valid and substantiated objections to the production of privileged material, and are completely ignorant of the fact that in many instances UPS has already provided the very information requested. For the same reasons, plaintiff's motion to compel production of documents is deficient. More egregious, however, is the fact that plaintiff seeks to compel responses to her Second Set of Requests for Production of Documents, which are <u>not yet due</u>, rendering plaintiff's Motion premature and sanctionable.

Accordingly, defendants' request that plaintiff's Omnibus Motion be denied in full.

## II. OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL INSPECTION OF THE SUBJECT PACKAGE CAR

### A. <u>Factual Background</u>

UPS owns and remains in possession of the package car operated by Mark Bard at the time of the accident. UPS has preserved the package car in its post-accident condition. On November 22, 2004, Plaintiff's counsel and at least two of plaintiff's experts inspected the package car in its post-accident condition. On December 15, 2005, after plaintiff inspected the package car, UPS's counsel informed plaintiff's counsel that UPS would preserve the damaged portion of the package car – namely the hood – and would return the package car to regular service. <u>See</u> letter of December 15, 2004 from Jayne A. Risk, Esquire to Michael T. van der Veen, Esquire, attached hereto as Exhibit "A". Plaintiff's counsel informed UPS that it wished

3

to inspect the package car a second time, and UPS agreed to preserve the package car and produce it for inspection upon plaintiff's request. See letter of February 11, 2005 from Ms. Risk to Mr. van der Veen, attached hereto as Exhibit "B". Thereafter, plaintiff failed to request to inspect the package car.

Two months later, by letter dated February 17, 2005, counsel for UPS again corresponded its intention to release the package car to normal service, while maintaining the damaged hood, and seeking plaintiff's agreement with that course of action. See letter dated February 17, 2005 from Ms. Risk to Mr. van der Veen, attached hereto as Exhibit "C". Plaintiff's counsel responded by objecting to the release of the package car to regular service because plaintiff intended to conduct further investigation that required a second inspection of the package car. See letter of February 17, 2005 from Mr. van der Veen to Ms. Risk, attached hereto as Exhibit "D". UPS thereafter agreed to continue preserving the package car, requesting that if plaintiff intended to conduct further inspections that plaintiff cooperate by doing so "in a timely manner." See letter dated February 21, 2005 from Ms. Risk to Mr. van der Veen, attached hereto as Exhibit "E".

Plaintiff did not, however, schedule a timely second inspection of the package car. Three months later, UPS again corresponded that it wished to return the package car to regular business service, reminding plaintiff's counsel that the hood, the part of the package car that was damaged, would be preserved. UPS also confirmed plaintiff's counsel's verbal representations that plaintiff intended to conduct the inspection by the end of the month of April. See letter of April 6, 2005 from Ms. Risk to Mr. van der Veen, attached hereto as Exhibit "F". Again, plaintiff failed to schedule a second inspection of the package car. Again, on May, 3, 2005, UPS restated its request that the plaintiff schedule an immediate inspection. See letter of May 3, 2005

4

from Ms. Risk to Mr. van der Veen, attached hereto as Exhibit "G". Plaintiff's counsel responded, again, that it was his "intention" to inspect the package car. See letter of May 6, 2005 from Mr. van der Veen to Ms. Risk, attached hereto as Exhibit "H".

After <u>seven months</u> and despite numerous telephone calls and repeated written correspondence, plaintiff failed and/or refused to schedule the second inspection. Plaintiff's counsel's refusal to follow through with his own demand to perform a second inspection, while unreasonably insisting that UPS indefinitely maintain the package car in its post-accident condition, unfairly prejudices UPS's rights with respect to its own property and business. Accordingly, on June 2, 2005, UPS filed a Motion for Protective Order, requesting that this Court direct plaintiff to conduct an inspection within ten days of the entry of said Order and after the expiration of ten days releasing UPS from any further obligation to preserve the package car in its post-accident condition.

Prior to disposition of UPS's Motion for Protective Order, plaintiff's counsel finally agreed to conduct his second inspection of the package car. Accordingly, UPS withdrew its Motion for Protective Order. See letter of June 17, 2005 from Mr. van der Veen to Ms. Risk, attached hereto as Exhibit "I". Through a series of correspondence and telephone conversations, the parties verbally agreed that the inspection would be conducted on August 24, 2005, to include inspection of the tires at the UPS facility, noise level testing of the package car engine to ensure compliance with federal regulations and taking the package car to the location of the accident for the purpose of examining the driver's line of sight. See letter of August 22, 2005 from Ms. Risk to Mr. van der Veen, attached hereto as Exhibit "J". Counsel for UPS requested plaintiff provide a <u>specific</u> protocol for the inspection. Pursuant to UPS's request, plaintiff's

5

counsel, by letter, gave UPS's counsel a precise "description of the protocol and requirements attendant to [plaintiff's] inspection." See Ex. I. Specifically, plaintiff's counsel stated:

> First, I want to raise the UPS truck from the ground at the UPS facility so that I may inspect the tires for wear, tear, and road marks. Second, at the accident scene, I want to inspect the package car for noise levels and sight lines. As I am sure you are aware, there are federal regulations mandating that truck motors not operate too loudly. I want to verify that the UPS car is in compliance. ... I am going to have an individual sit in the package car so that I can understand what Mr. Bard sensed as he approached this accident.

See Ex. I.

On August 22, 2005, out of an abundance of caution initiated by plaintiff's counsel's questionable methods to date, counsel for UPS wrote to plaintiff's counsel to confirm the precise protocol for the inspection as previously specified by plaintiff's counsel in his letter of June 17, 2005. See Ex. J. That same day, with less than 48 hours notice until the scheduled inspection, plaintiff's counsel responded by informing defense counsel for the first time that the "inspection" he intended to perform would actually include the use of video and sound recording devises installed in and around the scene of the accident, including in the package car itself, and that he intended to conduct repeated tests in which the decedent's motorcycle would be driven toward the scene of the accident at varying speeds and various gears, with the package car being placed in various positions on the road in the path of the motorcycle. See letter of August 22, 2005 from Mr. van der Veen to Ms. Risk, attached hereto as Exhibit "K".

Despite plaintiff's counsel's protestations to the contrary and claims of a simple "miscommunication," this was indeed the first time that he revealed the full protocol that he intended for the inspection, which would actually be an accident reconstruction. In fact, during a break in a deposition conducted that very morning (August 22), UPS's counsel specifically asked

6

plaintiff's counsel whether the inspection he intended to conduct would be comprised of anything other than what he represented it would be in his letter of June 17. At no time during that face-to-face conversation did Plaintiff's counsel disclose his extensive arrangements for an accident reconstruction involving decedent's motorcycle, as described by him later that day in a late-afternoon correspondence. See letter of August 22, 2005 from Ms. Risk to Mr. van der Veen, attached hereto as Exhibit "L."

Notwithstanding the fact that UPS believes it was intentionally and purposefully deceived, UPS believed itself prejudiced both by an inability to adequately prepare for the undisclosed, extensive testing and by an inability to investigate whether the precise protocol intended by plaintiff's counsel was permissible, reliable, had sufficient safeguards for the integrity of the package car and would result in the procurement of relevant information. In addition, UPS is under no obligation to participate in a reconstruction of plaintiff's design. As such, UPS cancelled the inspection scheduled for August 24, 2005, informing plaintiff's counsel that, absent a Court Order, the package car would not be made available for him to conduct an inspection upon which the parties never agreed. See Ex. L.

**B.     Argument**

Plaintiff and defendants had reached a mutual understanding as to the precise protocol of the inspection such that UPS had adequate notice. The original protocol involved a true inspection, including inspection of the tires, noise level testing of the package car engine noise (by machine) to ensure compliance with federal regulations and observations of Mr. Bard's line of sight at the location of the accident. In an effort to be reasonable and more than cooperative, UPS agreed to these tests and inspections. However, forced to reveal his true intentions, plaintiff's counsel made an eleventh hour revelation that he had been planning a much more

extensive inspection, comprised of a multi-faceted accident reconstruction. Less than 48 hours before the inspection, plaintiff's counsel advised that he intended to use video and sound recording devises installed in and around the scene of the accident, in the package car itself and the motorcycle, and that he intended to engage *repeated* tests in which the decedent's motorcycle would be driven toward the scene of the accident at *varying* speeds and *various* gears, with the package car being placed in *various* positions on the road in the path of the motorcycle.

Plaintiff's request for "inspection' exceeds the permissible scope of inspection under Rule 34, which does not provide for unfettered testing; rather it specifically states that inspection and testing are permissible only within the scope of Rule 26(b). Relevance, as well as certain limitations relating to expense, burden and feasible alternatives, are criteria found within the scope of Rule 26(b). While relevancy under Rule 26 is to be construed liberally, Hickman v. Taylor, 329 U.S. 495, 507 (1947), it is also determined and limited by the context of the facts and circumstances of each particular case. Williams v. American Cyanamid, 164 F.R.D. 608, 610 (D.N.J. 1995). As the precise boundaries of relevance under Rule 26 depend on the context of the action, the determination of relevance is within the court's discretion. Id.

Plaintiff's counsel had first stated that his intention was to determine whether the noise levels within the package car comply with federal regulation and to determine what Mr. Bard perceived at the time of the accident. See Ex. "I." By agreeing that such information is relevant, UPS agreed to produce the package car so plaintiff's counsel could perform tests involving the use of noise measurement devises within the package car itself. The testing that plaintiff's counsel later revealed an intent to perform is far more extensive, with the conditions that he plans to examine and/or recreate being far too varied in nature. The individual driving plaintiff's motorcycle toward the scene of the accident cannot be relied upon to recreate the manner in

which the decedent was driving, especially since he or she will be doing so at varying speeds and varying gears and the package car will be placed at varying locations. Sounds and images of the motorcycle recorded by audio and visual devises placed randomly around the accident scene are irrelevant to what Mr. Bard perceived as the motorcycle approached. Such testing is entirely speculative and cannot be relied upon to recreate the exact or even similar conditions and events on the date of the accident. UPS should not be forced to participate in a reconstruction of plaintiff's design.

A similar issue arose in In re Air Crash Disaster at Sioux City, 1991 U.S. Dist. LEXIS 10372 (D. Ill. 1991), wherein plaintiffs requested that the defendant airline supply its own aircraft so that plaintiffs could carry out in-flight tests to recreate the accident. The Court found the request to be unduly burdensome, noting that Rule 34 does not require a party to conduct tests on machinery according to the opposing party's specifications. The Court stated that the airline did not have to provide its own aircraft so plaintiffs could re-enact the accident and that this type of testing fell outside the scope of Rule 34. Id. at 5. The Court also noted that it would be less burdensome and less expensive for plaintiffs to lease an aircraft to perform their own flight tests. Id. at 7.

The accident reconstruction proposed by plaintiff would require UPS to subject its property to tests and re-enactments according to plaintiff's specifications. UPS should not be obligated to subject its private property to such speculative and prejudicial testing when plaintiff has the less burdensome option of leasing a car to perform her tests, the same option the Court remarked was at the plaintiff's disposal in Air Crash Disaster at Sioux City, supra. Plaintiff's counsel acknowledged this option. In fact, by letter dated September 5, 2005, plaintiff's counsel informed UPS that if UPS did not agree to produce the package van, plaintiff would "rent a van."

See letter from Anthony Bocchino to Jayne A. Risk dated September 5, 2005, attached hereto as Exhibit "M". By return correspondence, UPS's counsel advised plaintiff's counsel to do so.

In addition, UPS has no assurance that the package van would not be subjected to unnecessary damage, either intentionally or accidentally. Plaintiff's argument that destructive testing is permitted relied on case law that is factually distinguished from the present case. Spell v. Kendall-Futuro Co., 155 F.R.D. 587 (D. Tex. 1994), is a consumer product liability case involving a walking cane in which the court permitted destructive testing because the injured party alleged a defect in the cane, making its tensile strength and composition relevant. Id. at 587. This case is distinguishable for obvious reasons, as it is not a products liability case in which a defect in the car is alleged to have caused the plaintiff's injuries. In fact, the condition of the package car is not, and has never been, an issue in this case. This case involves an allegation of negligence on the part of Mr. Bard while he was operating the package car. Extensive and/or destructive testing of the package car itself is not relevant.

Plaintiff's counsel and experts have already inspected the package car. Now, more than ten months later and only after a motion for protective order to release the van and repeated efforts by UPS to cooperate by making the package car available for a *second* inspection, Plaintiff's counsel has again failed to conform to basic rules of fairness. By his misleading and underhanded tactics, plaintiff's counsel has created yet another unjustifiable delay in UPS's ability to repair the package car and return it to service, a prejudice which continues to impact UPS's business and property interests. As such, UPS requests that plaintiff's motion be denied and that UPS be released from any further obligation to preserve the package car in its post-accident condition such that it can repair the package car and immediately return it to regular business use.

III. **OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DEFENDANT MARK BARD TO SUBMIT TO A PHYSICAL EXAMINATION**

On or about August 24, 2005, plaintiff served a "Request for Mark Bard to Submit to a Physical Examination by an Audiologist and Ophthalmologist Pursuant to Rule 35," a copy of which is attached hereto as Exhibit "N". However, good cause does not exist to compel such an examination, and as such Mr. Bard refused to voluntarily submit to the requested testing. See letter from Jayne A. Risk to Michael van der Veen dated August 25, 2005, attached hereto as Exhibit "O". Neither Mr. Bard's visual acuity nor his hearing are a matter in controversy in this case.

Rule 35 provides that "when the mental or physical condition ... of a party ... is *in controversy*, the court ... may order the party to submit to a physical or mental examination... The order may be made only on motion for good cause shown...". See F.R.C.P. 35 (emphasis supplied).

Plaintiff insists that her allegations of negligence against Mr. Bard relating to his operation of a motor vehicle have placed his audio and visual acuity "in controversy." However, the Supreme Court of the United States has specifically held otherwise:

> The "good cause" and "in controversy" requirements of Rule 35 make it very apparent that sweeping **examinations of a party who has not affirmatively put into issue his own mental or physical condition are not to be automatically ordered merely because the person has been involved in an accident ... and a general charge of negligence is lodged.** ... To hold otherwise would mean that such examinations could be ordered routinely in automobile accident cases. The plain language of Rule 35 precludes such an untoward result.

Schlagenhauf v. Holder, 379 U.S. 104, 121-122 (U.S. 1964) (emphasis supplied).

11

A mere claim of relevance will not suffice. The Supreme Court remarked that "the specific requirement of good cause would be meaningless if good cause could be sufficiently established by merely showing that the desired materials are relevant, for the relevancy standard has already been imposed by Rule 26(b). Thus, by adding the words 'good cause' the Rules indicate that there must be greater showing of need ... than under the other discovery rules." Id. at 118. In point of fact, when discussing whether the defendant's health was placed in controversy for purposes of Rule 35, the Supreme Court noted that the movant had specifically pled in the Complaint that the defendant "was not mentally or physically capable of operating the bus at the time of the accident" and that a codefendant's cross-claim included an allegation that "the eyes and vision of Schlagenhauf was [sic] impaired and deficient." Id. Nonetheless, the Supreme Court found that even such specific pleadings were not sufficient to place the defendant's health in controversy. In the case *sub judice*, plaintiff did not even plead that Mr. Bard's audio or visual acuity was impaired or that his health in any way affected his ability to operate the package car.

Notwithstanding the fact that Mr. Bard's health is not a matter in controversy, defendants have nonetheless produced, as part of his employment file, Mr. Bard's Medical Examiner's Certificates for the years 1991, 1996, 1999, 2000, 2002 and 2004, which include documentation that Mr. Bard passed annual, independent medical examinations required by the Department of Transportation, including the examination on November 8, 2004, less than two weeks after the accident. See Medical Examiner's Certificate dated November 8, 2004, attached hereto as Exhibit "P". The federally mandated physical examinations include audio and visual acuity testing, and defendants offered to produce an affidavit attesting to that fact, see Ex. "O", an offer which plaintiff has ignored. Mr. Bard's passage of independent testing mandated by the Federal

Motor Carrier Safety Regulations ("FMCSR"), the very purpose of which is to ensure safety amongst motor carrier drivers on public highways, establishes that his visual and audio acuity are sufficient for the task of operating the package car.

Plaintiff cannot establish the "good cause" necessary to compel a party to submit to an independent medical examination, because there is none. Plaintiff has failed to pursue other avenues to establish Mr. Bard's medical health, including securing Mr. Bard's medical records and deposing the doctors who performed the FMCSR examinations. Additionally, Mr. Bard informed plaintiff during his deposition of the identity of his eye care provider. Such records may be obtained by plaintiff pursuant to subpoena, but plaintiff has failed to request them. Mr. Bard offered to execute the appropriate HIPAA-compliant authorizations so that plaintiff can obtain these records, see Ex. "O", however that offer was also ignored by plaintiff. Plaintiff has never requested that Mr. Bard execute a HIPAA-compliant authorization to release his eye care records, or for that matter, any medical records.

Plaintiff demands that Mr. Bard submit to an invasive physical examination, without good cause, despite the availability of alternative, sufficient sources of the information she seeks. This demand is obviously made to harass, embarrass and annoy Mr. Bard and UPS. The Supreme Court in Schlagenhauf has made clear that forcing an individual to submit to medical testing is serious matter not to be taken lightly, especially when that individual has not voluntarily placed his own health in controversy. *See also* In re Mitchell, 563 F.2d 143 (5th Cir. 1977) (Rule 35 order requires greater showing than general discovery under Rule 26); and see F.R.C.P. 26(b)(2)(i) (discovery shall be limited when "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less

13

burdensome, or less expensive"). There is no good cause to force Mr. Bard to submit to medical testing, therefore plaintiff's Motion must be denied.

IV. **OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL ANSWERS TO INTERROGATORIES AND OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL REQUESTS FOR PRODUCTION OF DOCUMENTS**

Plaintiff's contention that UPS's responses to Plaintiff's Interrogatories No. 12, 17, 37 and 39 are insufficient is baseless. Plaintiff further contends that UPS has not produced all documents in its possession relevant to this accident. To the contrary, UPS has either produced everything in its possession responsive to these requests or has asserted a valid objection to production.

### A. UPS is entitled to withhold facts learned, and opinions held, by its non-testifying consulting experts.

Interrogatory No. 12 requests photographs of the accident scene and the vehicles involved in the accident. UPS's initial response referred plaintiff to photographs that UPS had already produced in its Initial Disclosures. See UPS's Supplemental Response to Interrogatories, original response to No. 12, attached hereto as Exhibit "Q".[1] Thereafter, UPS supplemented its response to Interrogatory No. 12 because, during the course of the litigation, UPS has procured and produced additional photographs. See UPS's Supplemental Response to Interrogatory No. 12, Ex. "Q". To date, UPS has produced 23 photographs of the accident scene and motorcycle taken by UPS, 24 photographs of the accident scene taken by counsel for UPS, 176 photographs

---

[1] Plaintiff mistakenly complains that photographs taken by UPS's insurer, Liberty Mutual, during its investigation have not been produced. UPS has repeatedly informed plaintiff's counsel that the photographs produced by UPS in its Initial Disclosures are the photographs taken by Liberty Mutual.

14

of the accident scene and motorcycle taken by agents of UPS, and 109 photographs of plaintiff's personal effects taken by counsel for UPS. <u>UPS has produced a total of 332 photographs</u>. In fact, the <u>only</u> photographs that UPS has not produced are the privileged work product taken by consulting experts in preparation for this litigation.

The information gathered, and thoughts, impressions and conclusions formed, by consulting experts in preparation of litigation are privileged pursuant to Rule 26(b). Plaintiff cannot show, as required by Rule 26(b)(3), that she is unable to obtain the substantially equivalent information regarding the accident scene and the motorcycle, as she has had continuous and unfettered access to the both. In fact, she has had more access than to the motorcycle than UPS has had. Plaintiff also possesses the 24 police photographs depicting the accident scene and the motorcycle on the date of the accident.

Plaintiff argues that each photograph is unique because it depicts an object "at a particular time and place" and as such plaintiff cannot obtain the equivalent of the photographs taken by UPS's experts. Plaintiff's standard for "equivalent" is absurd, as it would make every single piece of investigatory evidence gathered by consulting experts subject to disclosure because every piece of evidence is gathered "at a particular point in time and place." This would standard would eviscerate the work product protections of Rule 26. Plaintiff possesses the motorcycle. Plaintiff possesses the photographs taken by the Delaware State Police Department of the motorcycle and the scene of the accident, which were taken on the date of the accident. Plaintiff's experts have conducted their own investigation of the accident scene and the motorcycle. She is not, therefore, entitled to UPS's consulting experts' privileged work product.

Equally so, plaintiff is not entitled to know the identities of UPS's consulting experts who conducted an investigation of the accident. Plaintiff's Motion seeks to compel UPS to disclose

15

that information because "the people who investigated the incident scene and later, the Vascek motorcycle have unique information which cannot be reproduced with reasonable equivalency." (See plaintiff's memorandum, pp. 11-12). Again, plaintiff's definition of "equivalent" completely undermines the purpose of Rule 26(b). Rule 26(b)(4)(B) provides that a non-testifying expert's deposition may be taken only "upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means." The party seeking discovery from the expert "carries a heavy burden in demonstrating the existence of exceptional circumstances." Ager v. Jane Stormont Hospital & Training School for Nurses, 622 F.2d 496, 503 (10th Cir. 1980); Disidore v. Mail Contrs. of Am., Inc., 196 F.R.D. 410, 415 (D. Kan. 2000).

With the exception of UPS's consulting experts, everyone in this case with knowledge of the accident have been deposed or are available to be deposed. This includes the investigating police officer, who plaintiff's counsel deposed for a full eight hours. Plaintiff possesses the police investigation report, as well as UPS's insurer's photographs and the police photographs taken of the accident scene and motorcycle. There is absolutely no evidence that UPS's consulting experts altered the motorcycle or accident scene in any way. Plaintiff retained counsel as early as November 2004, weeks after the accident. One eyewitness has testified at his deposition that he accompanied plaintiff's counsel and experts to the scene of the accident within weeks after the accident. Another witness will testify that she too accompanied plaintiff's counsel to the scene within weeks after the accident. Plaintiff has had every opportunity to photograph, assess and analyze the scene of the accident and the motorcycle.

In Disidore, *supra*, the Court determined that these very facts precluded a finding that the plaintiff demonstrated "exceptional circumstances" entitling her to depose the defendant's

consulting experts. Id. at 416-417. Therein, the Court determined that plaintiff has access to evidence of the equipment in its post-accident condition, such as police photographs, defendant's photographs, and depositions of fact-witnesses with knowledge of the accident, including the investigating police troopers, and that there was no evidence that defendant's expert altered the equipment such that plaintiff's experts could not conduct their own investigation. Id.

To the extent plaintiff argues that UPS's consulting experts are merely fact-witnesses because they have knowledge of the accident, it has been specifically held that:

> Rule 26(b)(4)(B) expressly protects the "facts known" by the expert, in addition to his/her opinions. [Defendant's expert] did not forfeit his protected status as a non-testifying expert merely because he learned "facts" in the course of his inspection. For purposes of Rule 26(b)(4)(B), the relevant distinction is not between fact and opinion testimony but between those witnesses whose information was obtained in the normal course of business and those who were hired to make an evaluation in connection with expected litigation.

Disidore, supra at 415 (D. Kan. 2000)(internal citations omitted) *quoting* Bank Brussels Lambert v. Chase Manhattan Bank, N.A., 175 F.R.D. 34, 42 (S.D. N.Y. 1997) (Rule 26(b)(4)(B) expert does not lose expert status just because it learns facts during its investigation).

Plaintiff's consulting experts are equally capable of conducting their own thorough investigation with the body of evidence available in this case, thus plaintiff lacks the "exceptional circumstances" necessary to discover the facts known and opinions held by UPS's consulting experts.

### B.   Plaintiff cannot compel UPS to produce responses to discovery requests that are not yet due

In its Motion to Compel responses to requests for production of documents, plaintiff demands the following:

- Repair records of the UPS vehicle for the previous three years;

- Driver's logs in previous years up to and including the day of the accident;

- DIAD records;

- Pre-trip inspection form check list;

- Phone and paper logs for defendant Mark Bard;

- All UPS reports filed with the Department of Transportation, Delaware Motor Vehicle Department and U.S. Department of Transportation; and

- All documents requested in plaintiff's supplemental request for production of documents.

See Plaintiff's Memorandum, p. 7.

The foregoing document requests are the subject of plaintiff's Request for Production of Documents (Second Set), which were received by UPS on August 26, 2005 (a copy of which is attached hereto as Exhibit "R"). UPS's responses to the foregoing requests are not due until today, September 26, 2005. Accordingly, UPS served its responses to these requests today (a copy of which is attached hereto as Exhibit "S"). Clearly, plaintiff is not entitled to a court order compelling responses to discovery requests before such responses are due.

Upon receipt of plaintiff's Motion, defendants corresponded with plaintiff's counsel to remind him that defendants' responses to plaintiff's second Request for Production of Documents were not yet due, thus insisting that he withdraw his premature Motion. See letter from Jayne A. Risk to Michael van der Veen dated September 20, 2005, attached hereto as Exhibit "T". Plaintiff's counsel ignored defendants' request. Accordingly, UPS seeks sanctions against plaintiff's counsel for his filing of a premature Motion and subsequent refusal to withdraw it.

### C. UPS has produced all relevant, non-privileged information and documents responsive to plaintiff's requests

Plaintiff complains that UPS has failed to identify the materials it utilizes in the training of its drivers in response to Interrogatory No. 37. Notwithstanding the fact that Interrogatory No. 37 does not even request that UPS identify its training materials, nonetheless UPS produced the following training materials, identified in its discovery responses by bates number: UPS Habits Manual, UPS 0193 – 0296; Package Pickup and Delivery Methods, UPS 0297 – 0332; and Defensive Driving Methods, UPS 0333- 0375. UPS has identified and produced materials utilized in the training of its drivers. See Response to Interrogatories No. 36 and 37, Ex. "Q".

Contrary to plaintiff's contentions, UPS has produced sufficient information regarding its liability insurance coverage. UPS informed plaintiff that UPS is a self-insured entity and produced the declaration pages for its excess insurance coverage provided by Liberty Mutual. See Response to Interrogatory No. 39, Ex. "Q". Plaintiff has offered no legal authority substantiating that it is entitled to know the amount to which UPS is self-insured.

Plaintiff's bald allegations that UPS has not otherwise produced all relevant documents relating to this accident are unsubstantiated, frivolous and intended only to harass and further burden UPS. UPS has produced all relevant, non-privileged documents in its possession.

## V. CONCLUSION

For the foregoing reasons, defendants United Parcel Service, Inc. and Mark Bard respectfully request that this Court deny plaintiff's (1) Motion to Compel Inspection of the Subject Package Car; (2) Motion to Compel Mark Bard to Submit to a Physical Examination; (3) Motion to Compel Answers to Interrogatories; and (4) Motion to Compel Requests for Production of Documents; grant sanctions for plaintiff's violation of this Court's Order limiting

the parties to two pre-trial motions; grant sanctions for plaintiff's premature filing of a motion to compel responses to discovery requests before responses are due; and grant such other relief as this Court deems appropriate.

                                                        **RAWLE & HENDERSON LLP**

                                                        /s/ William J. Cattie, III
                                                        William J. Cattie, III, Esquire (#953)
                                                        Attorneys for Defendants
                                                        300 Delaware Avenue - Suite 1015
                                                        Wilmington, DE 19899
                                                        Telephone:   (302) 778-1200

                                                   **DLA PIPER RUDNICK GRAY CARY US LLP**

                                                        O. Daniel Ansa (*admitted pro hac vice*)
                                                       Jayne A. Risk (*admitted pro hac vice*)
                                                       Attorneys for Defendants,
                                                       One Liberty Place
                                                       1650 Market Street, Suite 4900
                                                       Philadelphia, PA 19103
                                                       Telephone:   (215) 656-3328

Dated: September 26, 2005