# Exhibit J



**DLA Piper Rudnick Gray Cary US LLP**
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, Pennsylvania 19103-7300
**T** 215.656.3300
**F** 215.656.3301
**W** www.dlapiper.com

JAYNE RISK
jayne.risk@dlapiper.com
**T** 215.656.3328 **F** 215.606.3328

August 22, 2005

**VIA TELEFAX**

Michael T. van der Veen, Esquire
Kats, Jamison, van der Veen & Associates
25 Bustleton Pike
Feasterville, PA 19053

**Re: Vascek v. United Parcel Services, Inc. and Mark Bard**

Dear Mr. van der Veen:

This letter serves to confirm that your second inspection of the UPS package van is scheduled for August 24, 2005. I understand that you have made arrangements with the Delaware State Police to close off the intersection of Twaddle Mill and Montchanin Roads at 3:00 P.M. The UPS package van will be transported to the scene by 3:00 P.M.

You have also requested the opportunity to "raise the UPS truck from the ground" so that you may inspect the tires for wear, tear and road marks. Please be advised that this inspection may occur at the UPS facility at Ruthar Road, Newark, Delaware at 2:00 P.M.

The following is the full protocol for your inspection as you have described in your attached June 17, 2005 letter:

First, at the UPS facility, the UPS truck will be raised for the purpose of inspecting the tires for wear, tear and road marks.

Second, at the accident scene you requested the opportunity to inspect the package van for "noise levels" and "sight lines." In our telephone conversation, you specifically requested only that your expert be allowed the opportunity to sit in the driver's seat of the van to accomplish these tasks. I anticipate these can be accomplished in a very short time, at the very most within an hour.

In addition, I assume that it is not necessary to advise you that this is not authorization for use of the vehicle for the purpose of attempting a reconstruction of the accident. As you have





not disclosed anything beyond this protocol, I trust that the UPS vehicle will be the only vehicle at the scene, and indeed, will be the only vehicle permitted to be at the scene.

This is the sum and substance of all that you have requested as a part of your protocol for your inspection. Specifically, this protocol does not include the use of any type of recording or testing devices.

As we had agreed, when the hood is replaced to allow the package van to be "road worthy," the replacement hood will be of the same specifications as the original hood on the package van at the time of the accident.

Please provide the specifics of the protocol for your second inspection scheduled on Wednesday, August 24. The inspection will not proceed unless the protocol is specific to everything that will be done or that is being asked to be done.

Very truly yours,

Jayne A. Risk

JAR:pd
Enclosure
cc: Richard R. Wier, Jr., Esquire
William Cattie, Esquire

**DICTATED BUT NOT READ**

# Exhibit K

LAW OFFICES
OF
# KATS, JAMISON, VAN DER VEEN & ASSOCIATES†

25 BUSTLETON PIKE
FEASTERVILLE, PA 19053

MARINA KATS+Δ
SETH J. JAMISON* (1961-1998)
MICHAEL T. VAN DER VEEN** Δ

OF COUNSEL:
MICHAEL N. DAVID***
+ Member PA, NJ, NY & Wash., D.C. Bars
* Member PA, NJ Bars
** Member PA, NJ & IL Bars
*** Member PA, NJ & NY Bars
Δ LL.M in Trial Advocacy

(215) 396-9001
FAX (215) 396-8388
(800) LAW-1917
E-mail: Marina@mkats.com
Website: http://www.mkats.com

NEW JERSEY OFFICE
1 Pennington-Washington
Crossing Road; Suite 12
Pennington, NJ 08534-3506
(856) 795-0999

NEW YORK OFFICE
110 Wall Street, 21st Floor
New York, NY 10005
(212) 496-5400

†LAW OFFICES OF
KATS & ASSOCIATES, P.C.

August 22, 2005

Jayne A. Risk, Esquire 215-606-3328
Piper Rudnick, Gray Cary
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, Pennsylvania 19103-7300

Re: Heidi Vascek, Individually and as Administratrix of the Estate <u>of John Vascek, Jr. v. United Parcel Services and Mark Bard</u>

Dear Ms. Risk:

Apparently there has been some mis-communication regarding the nature of the testing to be done to and with your client's package van on August 24, 2005.

1. The time of the road side test is 1:00 p.m. - 4:00 p.m., during which time the road will be closed to other traffic. We request that the van be at the scene by 12:20 p.m. so that appropriate recording devices can be installed.

2. During the course of the test, a devices recording sound levels will be placed in the package van by Plaintiff's expert engineer.

3. Mr. Vascek's motorcycle will travel towards the accident scene at various speeds and various gears and sound levels from the van will be recorded. These tests will be repeated from with the van at various positions on the road way (e.g. at the stop sign, where Monchanin Road meets Twadell Hill Road, from a point midway into the south bound lane of Monchanin Road).

4. A video camera will be placed at the eye level of Mr. Bard and record the line of sight from the driver's seat of the van towards the on-coming motorcycle.

5. A second camera will be placed on the motorcycle.

6. A third camera will be placed on the roadway in the center of Montchanin Road, pointed in the direction from which the motorcycle approached.

7. Before the van is driven to the accident scene, Plaintiff's expert engineer will do a sound test of the van at your Newark facility.

I understand from your letter of August 22, 2005, that you believe that any testing other than mentioned by you is not appropriate. Plaintiff is quite confident that the proposed testing is well within the legitimate bounds of discovery. I suggest that the procedure we should follow is for the testing to go on as scheduled, as outlined above, as significant time, money and energy has been expended that would have to be replicated at a later time. Defendants could then object to the admissibility of any testing and/or expert testimony that results from the testing. Should you not provide the van as requested for testing on August 24, 2005, at the time and for the duration requested, Plaintiff will not release the van to be put back in service and will seek appropriate costs for any necessary rescheduling of this testing.

The testing requested is standard, and not objectionable in any way. If Defendants view the results as unreliable or inadmissible for any reason, Defendant's rights are preserved by potential future motion practice.

Very truly yours,

Michael T. van der Veen

MTV:nb
cc: Richard R. Wier, Jr., Esquire
William Cattie, Esquire

# Exhibit L




DLA Piper Rudnick Gray Cary US LLP
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, Pennsylvania 19103-7300
T 215.656.3300
F 215.656.3301
W www.dlapiper.com

JAYNE RISK
jayne.risk@dlapiper.com
T 215.656.3328 F 215.606.3328

August 22, 2005

**VIA TELEFAX**

Michael T. van der Veen, Esquire
Kats, Jamison, van der Veen & Associates
25 Bustleton Pike
Feasterville, PA 19053

**Re: Vascek v. United Parcel Services, Inc. and Mark Bard**

Dear Mr. van der Veen:

I am in receipt of your facsimile of August 22, 2005, which I received at 4:41 P.M. (noted on the bottom of your letter which is attached). There is no miscommunication regarding the nature of the inspection that was scheduled for August 24, 2005. Your revised protocol does not meet with our agreement nor does it comport in any way with your letter dated June 17 wherein you described what exactly you intended to do during your second inspection of the package van.

What you have described in the attached facsimile of today is a total aberration of anything that you have requested for this "inspection," let alone, what was agreed to. As I made quite clear in my facsimile of this morning (which I am sure is what prompted your latest facsimile), your purported second inspection was in no way an authorization for you to engage in an attempted reconstruction of this accident. As recently as this morning at a break during Corporal Weaver's deposition, I asked you specifically if you had intended to do anything other than what you had outlined in your letter of June 17, specifically that you wanted to inspect the package van tires at the facility, and then inspect the package van for noise levels at the scene. At no time have you ever disclosed to me your intention to attempt to reconstruct this accident, to place cameras on a UPS vehicle, or to have someone attempt to drive Mr. Vascek's motorcycle toward the accident scene. Your underhanded methods and attempts to mislead are sanctionable. As such, and as a result of your continued less than ethical methods, the package van will not be available for your inspection on August 24 or any other date barring a Court Order.





I am attaching copies of your letters of June 17, 2005 and August 22, 2005, and my previous letter of August 22, 2005.

Jayne A. Risk

JAR:mj
Attachments

cc: Richard R. Wier, Jr., Esquire
William Cattie, Esquire

# Exhibit M

LAW OFFICES
OF
KATS, JAMISON, VAN DER VEEN & ASSOCIATES†
25 BUSTLETON PIKE
FEASTERVILLE, PA 19053

MARINA KATS+Δ
SETH J. JAMISON* (1961-1998)
MICHAEL T. VAN DER VEEN** Δ

OF COUNSEL:
MICHAEL N. DAVID***
+Member PA, NJ, NY & Wash., D.C. Bars
*Member PA, NJ Bars
** Member PA, NJ & IL Bars
*** Member PA, NJ & NY Bars
Δ LL.M in Trial Advocacy

(215) 396-9001
FAX (215) 396-8388
(800) LAW-1917
E-mail: Marina@mkats.com
Website: http://www.mkats.com

NEW JERSEY OFFICE
1 Pennington-Washington
Crossing Road; Suite 12
Pennington, NJ 08534-3506
(856) 795-0999

NEW YORK OFFICE
110 Wall Street, 21st Floor
New York, NY 10005
(212) 496-5400

†LAW OFFICES OF
KATS & ASSOCIATES, P.C.

September 5, 2005

Jayne A. Risk, Esquire
Piper Rudnick Gray Cary
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, Pennsylvania 19103-7300

215-606-3328

Re: Heidi Vascek, Individually and as Administratrix of the Estate of John Vascek, Jr. v. United Parcel Services and Mark Bard

Dear Ms. Risk:

I am writing in response to your letter of August 29, 2005 regarding Plaintiff's responses to Defendant's Interrogatories in the above-captioned matter.

1. As to Interrogatory No. 9, the financial loss to the Plaintiff due to the death of Mr. Vascek will be the subject of expert testimony. That analysis is not yet complete. When it is, Plaintiff will provide the report of her expert economist.

2. As to Interrogatory No. 11, Plaintiff provided tax returns for the years 2000, 2001, 2002 and 2003. However, if defendant is unable to locate those returns, please notify me and duplicates will be provided.

3. As to Interrogatory No. 15, what you request is trial preparation material protected from disclosure by FRCP 26. The information is not unique and, in fact, Defendant is in possession of the only unique photographs of the scene, those taken by representatives of the Defendant on the day of the incident. That being said, Plaintiff will gladly exchange all photographs taken in preparation of this matter for litigation in exchange for a like exchange from the Defendants of all photographs taken by Defendants or their representatives in preparation of this litigation.

4. Nina is in the process of obtaining all addresses and will be supplied within the week.

5. As to Interrogatory Nos. 21 and 22, what you request is again trial preparation material protected by FRCP 26. Should Mr. Govatos or Mr. Baxter be called as testifying expert witnesses for the Plaintiff, Plaintiff, will, of course, provide notice of the same to you and provide a written report containing reference to all material considered in reaching their opinions.

6. As to Interrogatory No. 31, Plaintiff is making a search for the "safety books" referred to by the Plaintiff, and will provide the information that you request that is a product of that search.

7. As to Interrogatory No. 32, as explained, the response of the Plaintiff is: (a) Mr. Vascek took and passed all required licensure examinations for operating a motorcycle which contained information as to the safe use of a motorcycle. (b) To Plaintiff's knowledge, Mr. Vascek was never warned by anyone regarding safe operation of his motorcycle. (c) Mr. Vascek did, however, make numerous safety modifications to his motorcycle surrounding which it can be assumed that he received information regarding those safety modifications with persons unknown at this time.

8. As to Interrogatory No. 42, Plaintiff has no first hand knowledge of how the incident in question occurred. That being said, it is the belief of the Plaintiff that the Defendant, Bard, in operation of the Defendant UPS package van, violated his duties at a stop sign, violated the right of way of Mr. Vascek, stopped the van completely blocking Mr. Vascek's right of way, leaving Mr. Vascek no ability to avoid the collision which caused the death of Mr. Vascek. At trial, Plaintiff will present expert

accident reconstruction testimony that more fully develops how and why Mr. Vascek died. That expert testimony will be the subject of a report by the accident reconstruction expert, which will be provided pursuant to the Court's order in this matter.

In addition, we have received your response to our request for inspection and the use of the package van in our proposed testing. The purpose of the new request was to clarify what we sought to accomplish and to have a clean statement of what was requested and your response. We will, of course, pursue an order to compel this inspection, but if you persist in your refusal to allow the inspection, we propose, in the alternative, we will rent a van of the same make, model and dimensions to conduct our own testing.

As to our request for visual and hearing testing of Mr. Bard, it is Plaintiff's position that both his eyesight and hearing are in question, as he neither saw a motorcycle (with lights on) that he should have been able to see, nor heard a motorcycle that given his position, with doors open, that he should have been able to hear. The fact that he testified that his eyesight and hearing are fine, does not, as I am sure you realize, resolve the issue. That being said, if there exists a record of testing conducted of Mr. Bard's eyesight and hearing, please provide it. If that testing is sufficient for our purposes, we will withdraw our request for the physical examination of Mr. Bard.

When you receive this letter, I would appreciate the courtesy of a phone call at (215) 204-8949, during which time we can address your letter, this response, and your response to my letter of August 31, 2005, as well as other outstanding discovery issues. Hopefully, during that phone call, we can agree on an exchange of information, or agree to disagree and go forward with appropriate motion practice.

Sincerely,

Anthony J. Bocchino

AJB:nb
cc: Richard Wier, Esquire
William Cattie, Esquire

# Exhibit N

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **HEIDI VASCEK, individually and as Administratrix of the ESTATE OF JOHN VASCEK, JR., Plaintiffs,** | : | |
| | : | **C.A. No. 04-1538** |
| **vs.** | : | |
| | : | |
| **UNITED PARCEL SERVICE, INC. and MARK BARD, Defendants.** | : | |

**REQUEST FOR DEFENDANT, MARK BARD**
**TO SUBMIT TO A PHYSICAL EXAMINATION BY AN AUDIOLOGIST**
**PURSUANT TO RULE 35**

Pursuant to Rule 35 of the Federal Rules of Civil Procedure, Plaintiff requests that Defendant Mark Bard submit to a physical examination by an audiologist or other medical specialist qualified to determine Mark Bard's hearing acuity and ophthalmologist or other medical specialist qualified to determine Mr. Bard's visual acuity.

This examination will be conducted within twenty (20) days, but no later than ten (10) days before the discovery deadline, October 5, 2005.

Dated: 8/24/05

Michael T. van der Veen
Counsel for Plaintiff

# Exhibit O



**DLA Piper Rudnick Gray Cary US LLP**
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, Pennsylvania 19103-7300
**T** 215.656.3300
**F** 215.656.3301
**W** www.dlapiper.com

JAYNE RISK
jayne.risk@dlapiper.com
**T** 215.656.3328 **F** 215.606.3328

August 25, 2005

Michael T. van der Veen, Esquire
Kats, Jamison, van der Veen & Associates
25 Bustleton Pike
Feasterville, PA 19053

**Re: Vascek v. United Parcel Services, Inc. and Mark Bard**

Dear Mr. van der Veen:

I am in receipt of your August 25, 2005 request that Mark Bard submit to a physical examination by an audiologist and ophthalmogist pursuant to Rule 35. I write to inform you that Mark Bard will not submit to the requested examination. Rule 35 provides that "when the mental or physical condition ... of a party ... is in controversy, the court in which the action is pending may order the party to submit to a physical or mental examination... The order may be made only on motion for good cause shown...". Mark Bard's health is not the matter in controversy in this case. Moreover, the requisite good cause has not been shown nor Order of the Court entered.

There is no evidence that an audiology or ophthalmology examination is warranted here. Mr. Bard has testified that his hearing is good and that he does not require glasses for driving. In addition, we have previously produced the Medical Examiner's Certificates demonstrating that Mark Bard passed each of his physical examinations as required by the Federal Motor Carrier Safety Regulations, including the one most recently conducted in November, 2004. That physical examination included audio and visual acuity testing. If you require, we can produce an affidavit attesting to that fact. A copy of UPS-0026, the Medical Examiner's Certificate of November 8, 2004, is enclosed for your ease of reference. That examination was conducted by





an independent and disinterested party less than one month after the accident, making it a sufficiently reliable source of the information that you seek. Accordingly, there is not good cause to compel Mr. Bard to submit to additional testing. Additionally, Mr. Bard informed you during his deposition of the identity of his eye care provider. Such records may be obtained by you pursuant to subpoena. Please advise if you plan to subpoena those records and Mr. Bard will execute the appropriate authorization.

Sincerely,

Jayne Risk

Enclosure
cc: William Cattie, Esquire (w/enclosure)
Richard Weir, Esquire (w/enclosure)

# Exhibit P

**MEDICAL EXAMINER'S CERTIFICATE**

I certify that I have examined ______ in accordance with the Federal Motor Carrier Safety Regulations (49 CFR 391 41-391 49) and with knowledge of the driving duties I find this person is qualified and, if applicable only when

- [ ] wearing corrective lenses
- [ ] wearing hearing aid
- [ ] accompanied by a waiver/exemption ______
- [ ] driving within an exempt intracity zone (49 CFR 391 62)
- [ ] accompanied by a Skill Performance Evaluation Certificate (SPE)
- [ ] qualified by operation of 49 CFR 391 64

The information I have provided regarding this physical examination is true and complete. A complete examination form with any attachment embodies my findings completely and correctly and is on file in my office

| SIGNATURE OF MEDICAL EXAMINER | PHONE (INCL AREA CODE) | DATE |
|---|---|---|
| [signature] | 302-[illegible]-5700 | 11/8/[illegible] |

| MEDICAL EXAMINER'S NAME (PRINT) | |
|---|---|
| VANEETA KUBAL, M.D. | ☐ MD ☐ DO ☐ Chiropractor ☐ Physician Assistant ☐ Advanced Practice Nurse |

| MEDICAL EXAMINER'S LICENSE OR CERTIFICATE NO / ISSUING STATE |
|---|
| DE C1-0002109 |

| SIGNATURE OF DRIVER | DRIVER'S LICENSE NO | STATE |
|---|---|---|
| [signature] | 853596 | DE |

| ADDRESS OF DRIVER (STREET/CITY/STATE/ZIP) |
|---|
| 332 Meadow Glen Drive |

| EMPLOYEE ID NO OF DRIVER | MEDICAL CERTIFICATE EXPIRATION |
|---|---|
| 22[illegible] | 11 8. 06 |

0189510902 (REV 3/03)

11-08-06

**Verify that Employee and Medical Examiner have provided all required signatures, Remember Press Firmly**

1. Fill out **Driver's Copy** above
2. Press firmly, **check 2nd and 3rd copies** for legibility before detaching top "Driver's" copy
3. **Detach** completed top **"Driver's" copy** and give to Driver (if qualified)
4. **Send 2nd and 3rd copies to ClinNet** (do not separate 2nd and 3rd copy certificates from instructions - keep intact)
5. External Providers, if applicable, make photocopy for your records

REGION# 09 DISTRICT# [illegible]

Top copy - to Driver
2nd and 3rd copies - to ClinNet