02

## 2. Next of Kin Notified

On Tuesday evening, October 26th, 2004, Det. Norman V. Cochran, Jr., 4801, of the Delaware State Police Troop #2 Victim Services Unit, and Sgt. Matthew E. Cox, 2802, of the Delaware State Police Troop 1-A Brandywine Town Center Fatal Accident Investigation and Reconstruction (F.A.I.R.) Unit responded to the Christiana Hospital Emergency Room and made contact with the victim's wife, Mrs. Heidi M. Vascek, DOB 090673. Staff members of the Christiana Hospital Emergency Room notified members of the Vascek family via telephone of the collision. Family members were informed of Mr. Vascek's passing upon their arrival at the hospital. Det. Cochran and Sgt. Cox provided Mrs. Vascek and the Vascek family with basic investigation information, as it was known at that time.

## 3. Examination / Disposition of Vehicles

On Tuesday afternoon, October 26th, 2004, vehicle #1 was removed from the collision scene by Elmore Auto Collision LLC, of 4921 Governor Printz Boulevard, Wilmington, Delaware 19809, business telephone number 302-762-2301, and stored at their storage facility off of Governor Printz Boulevard until my inspection.

Vehicle #1 sustained moderate to severe contact during the collision. Contact damage was displayed around the upper portions of the motorcycle. Damaged areas included the upper front, handlebars, fuel tank, seat and upper rear. Slight contact damage was also located on the left side foot pedals, kickstand and wheel bolts. Vehicle #1 appeared to be operational after the collision. Yamaha manufacturer curb weight listing for vehicle #1 was approximately 400 pounds.

On Wednesday morning, October 27th, 2004, at approximately 0815 hours, I measured the collision damage and conducted a general vehicle inspection on vehicle #1. Refer to Motorcycle Damage Severity & Location Profiles form for specific details and related information.

On Tuesday afternoon, October 26th, 2004, vehicle #2 was removed from the collision scene by a representative of United Parcel Service, of 325 Ruthar Drive, Newark, Delaware 19711, business telephone number 302-456-6943, and stored at their storage facility off of Ruthar Drive.

Vehicle #2 sustained severe contact damage in the left front fender area of the vehicle. Contact damage included the left front fender, left front corner and left side hood area of the van. Vehicle #2 damage did not prevent the vehicle from being operated after the collision had occurred. Freightliner manufacturer listed gross weight listing for vehicle #2 was approximately 15,500 pounds. Vehicle #2 was carrying approximately fifty packages at the time of the collision, which was the estimated to be approximately 200 pounds (approximately four pounds per package/UPS estimations).

On Tuesday afternoon, October 26th, 2004, Sgt. Cox and I measured the collision damage and conducted a general vehicle inspection on vehicle #2 at the collision scene. Refer to Severity & Location Profiles form for additional details and related information.

**4. Alcohol/Drug Investigation**

Alcohol/drug involvement was not a factor in this motorcycle vs. van fatal motor vehicle collision.

Tests done on blood drawn from Operator #1, Victim/Injured #1, Mr. John S. Vascek, Jr., resulted with a negative finding for the presence of alcohol (BAC 0.00% and a negative finding for the presence of drugs. The blood was drawn during the autopsy and was analyzed by the Medical Examiner's Office. Refer to the Medical Examiner's Toxicology Report for additional details and related information.

Operator #2, Mr. Mark A. Bard, displayed no signs of alcohol/drug influence when initially contacted at the scene by emergency personnel and Delaware State Police. Mr. Bard stated that he had not consumed any alcohol or drugs on the day of the collision. Alcohol/drug tests were not requested by the Delaware State Police as part of this investigation due to the lack of probable cause. Mr. Bard did, however, voluntarily submit to a portable breath test (PBT) at the conclusion of his interview at the collision scene. On Tuesday afternoon, October 26th, 2004, at approximately 1810 hours, TFC John P. Forrester, 3302, of the Delaware State Police Troop 1, administered PBT #T-0088 to Mr. Bard. The results of the test revealed a negative finding for the presence of alcohol (0.00% BAC).

**5. Photographs**

A total of 24 color 35mm photographs were taken of the collision scene on Tuesday afternoon, October 26th, 2004. Those photographs were taken by me and depict the final resting position of the vehicles and of the overall collision scene upon my arrival.

A total of 6 color Polaroid photographs were taken of vehicle #1 during the vehicle inspection that was conducted on Wednesday morning, October 27th, 2004. Those photographs were taken by me at Ellmore Auto Collision, LLC storage facility.

A total of 2 color Polaroid photographs were taken of operator #1's motorcycle helmet during the vehicle #1 inspection that was conducted on Wednesday morning, October 27th, 2004. Those photographs were taken by me and display the left and right side of Mr. Vascek's helmet.

A total of 2 color Polaroid photographs were taken of the victim, Mr. John S. Vascek, Jr., at the Medical Examiner's Office on Wednesday afternoon, October

10/05/2005 11:47 12153968388 KATS AND ASSOCIATES PAGE 20/35

027

27th, 2004. Those photographs were taken by me at the conclusion of the autopsy as part of this investigation.

A grand total of 34 color photographs were taken during the investigation. All photographs are on file at the Delaware State Police Troop 1-A Brandywine Town Center Fatal Accident Investigation and Reconstruction (F.A.I.R.) Unit office. Photographs may be viewed by qualified parties by making an appointment with the investigator. Attorneys and insurance companies can obtain copies of the photographs through the Delaware State Police Headquarters Photo Unit.

FATAL

6. **Assisting Officers**

Cpl/3 Jeffrey W. Weaver, 7652, of the Delaware State Police Troop 1-A Brandywine Town Center Fatal Accident Investigation and Reconstruction Team (F.A.I.R.), is the assigned chief investigating officer and writer of this report. I was en route to the collision scene on Tuesday afternoon, October 26th, 2004, at approximately 1704 hours and arrived at approximately 1718 hours. I was assisted in this investigation by the following personnel:

1. Sgt. Matthew E. Cox, 2802, of the Delaware State Police Troop 1-A Brandywine Town Center Fatal Accident Investigation and Reconstruction (F.A.I.R.) Unit, assisted as a co-investigator during the investigation. Sgt. Cox was en route to the collision scene at approximately 1658 hours and arrived at approximately 1705 hours. Sgt. Cox assisted with processing the collision scene, inspecting vehicle #2 and with conducting an interview with Witness #1, Amy R. Stratton. See Sgt. Cox's supplemental report for additional details and related statement information.

2. TFC John P. Forrester, 3302, of Delaware State Police Troop 1, arrived at the collision scene at approximately 1625 hours. The Regional Communication Center (RECOM) did not record TFC Forrester's en route time. TFC Forrester assisted at the collision scene with scene security, traffic control and with administering a portable breath test (PBT) to operator #2, Mr. Mark Bard. TFC Forrester did not prepare a supplemental report as part of this investigation.

3. Cpl/3 Blaine L. Quickel, II, 3824, B Shift Assistant Road Supervisor, of Delaware State Police Troop 1, was en route to the collision scene at approximately 1640 hours and arrived at approximately 1641 hours. He assisted with scene security, traffic control and overall scene supervision until the F.A.I.R. Unit arrived and took over the investigation. Cpl/3 Quickel did not prepare a supplemental report as part of this investigation.

4. Cpl. Steve T. Rizzo, 3236, of Delaware State Police Troop 1, was en route to the collision scene at approximately 1657 hours. Cpl. Rizzo's arrival time was not recorded by RECOM. Cpl. Rizzo assisted at the collision scene with scene security and traffic control. Cpl. Rizzo did not prepare a supplemental report as part of this investigation.

10/05/2005 11:47 12153968388 KATS AND ASSOCIATES PAGE 21/35

5. TFC Andrew J. Hudak, 3366, of Delaware State Police Troop 1, was en route to the collision scene at approximately 1700 hours and arrived at approximately 1718 hours. TFC Hudak assisted with scene security and traffic control. TFC Hudak did not prepare a supplemental report as part of this investigation.

6. Det. Norman V. Cochran, Jr., 4801, of Delaware State Police Troop #2 Victim Services assisted with making family contact. Victim Services forms were completed and forwarded to Mrs. Kristin Joyce, Victim Services Representative of Delaware State Police Troop 6, and Ms. Debbie Reed, of the Delaware State Police Headquarters Victim Services Unit for additional follow-up. See Det. Cochran's Victim Services Supplemental Report for additional details and related information.

**7. Evidence / Property Receipts**

The collision scene was processed by the Fatal Accident Investigation and Reconstruction Unit utilizing the grid-coordinate system of measuring.

On Wednesday morning, October 27th, 2004, at approximately 0815 hours, I measured the collision damage and conducted a general vehicle inspection on vehicle #1. At the conclusion of the inspection, I took possession of several articles of clothing and property that had been collected at the scene by the tow company. I transported the items to the Medical Examiner's Office and turned them over to Medical Investigator Mr. Jack Ingle as part of this investigation. The property was transported to the funeral home with Mr. Vascek's body and then turned over to family members at a later time. The items included;

1. One Shoei motorcycle helmet
2. One pair of motorcycle gloves
3. One black in color motorcycle jacket
4. Two sweat shirts (one black and one blue)
5. One cell phone
6. One garage door opener
7. One E-Z pass activator

There was no additional evidence taken as a result of this investigation. There was no personal property removed from the vehicle, therefore, there were no additional Property Receipts issued as a part of this investigation.

**C. Interviews**

**1. Principles** FATAL

**Interview Operator #1, John S. Vascek, Jr.:**

Operator #1, Victim/Injured #1, Mr. John S. Vascek, Jr., was unable to be interviewed due to the severity of injuries he sustained and his death.

032

**Interview Operator #2, Mark A. Bard:**

Operator #2, Mr. Mark A. Bard, was contacted and interviewed by me on Tuesday afternoon, October 26th, 2004, at approximately 1755 hours. The interview was conducted in my assigned police patrol vehicle at the collision scene and was recorded with handwritten field notes. United Parcel Service Representative, Mr. Jim Jester, Package Operations Supervisor Atlantic District, for United Parcel Service, of 1506 Joh Avenue, Baltimore, Maryland 21227-1053, business telephone number 302-456-6906, was present during the interview. The following is a brief synopsis of the content of that interview.

Mr. Bard stated that he had just made a stop at 5801 Kennett Pike and was traveling eastbound on Twaddell Mill Road. He stopped at the stop sign at the intersection with Montchanin Road. Mr. Bard stated that he could not see, moved forward and still did not see anything coming. Mr. Bard stated that he was slowly coming out into the intersection when he suddenly saw a motorcycle approaching from his left side. The motorcycle was approximately fifty to seventy-five feet away from him when he first saw it. The motorcycle was flying. The headlights of the motorcycle were on and the operator was wearing a helmet. A female witness arrived at the scene and identified herself as a nurse (Identified as Witness #1, Mrs. Amy R. Stratton). Someone instructed Mr. Bard to move the truck back to provide space around the fallen motorcycle operator. The truck was backed up and moved from its original resting position. The nurse removed the operator's helmet and began attending to his medical needs. Others assisted at the scene by moving the motorcycle away as well. The motorcycle operator was initially face down on the ground. Mr. Bard does not wear glasses. He has been assigned to this route for approximately two years and this is his normally assigned route. He has been employed by UPS for approximately twenty-five years and has been driving for approximately twenty of those years. Mr. Bard stated that the motorcycle was traveling at a high rate of speed and estimated the speed to be approximately eighty miles per hour. Mr. Bard is an experienced motorcycle operator. He never heard the motorcycle approaching prior to the crash. The door of the UPS truck was open and he was wearing his seatbelt. He stated that he had no injuries (physical). *NOTE – Mr. Bard was visibly emotionally upset about the collision. The truck was not equipped with an airbag safety system. Mr. Bard stated that he had not consumed any alcohol or medications. He stated that he went to bed at approximately 2200 hours, Monday, October 25th, 2004, and got up at approximately 0610 hours, Tuesday, October 26th, 2004. He stated that he had received a good night sleep and described himself as being well rested and not tired. He additionally described himself as being in good health. He estimated that the collision occurred at approximately 1600 hours. The roadway surface was dry. Weather conditions were clear, sunny and cool. Traffic conditions were described as light. He did not remember anyone else being around when the collision occurred (other than the nurse that stopped to help). The nurse did not say much, but she did state that the motorcycle passed her right before the collision happened. (See Witness #1, Mrs. Amy R. Stratton, Section of this report for additional details and related statement information).

**INTERVIEW CONCLUDED APPROX. 1807 HRS., TUE., 102604.**

FATAL

On Wednesday morning, February 9th, 2005, approximately 0805 hours, Operator #2, Mr. Bard, was contacted by me in reference to this investigation and asked several follow-up questions. The conversation was conducted via telephone and recorded with handwritten notes. The following is a brief synopsis of the content of that conversation.

Mr. Bard confirmed what he had originally stated during his initial interview. Mr. Bard stated that the motorcycle had been moved from its original final resting position after the collision occurred. Mr. Bard stated that he was instructed to move the UPS truck by one of the nurses that had arrived at the collision scene and was attending to the injured motorcycle operator. He moved the truck and then assisted another person with moving the motorcycle away from the injured operator to help provide additional working space. Mr. Bard assisted with providing cardio pulmonary resuscitation (CPR) to the motorcycle operator.

Mr. Bard additionally stated that when he saw the motorcycle, he gripped onto the steering wheel, slammed onto the brake and held on for the impact. The motorcycle struck the truck instantly after he saw it. The impact knocked the truck sideways and also most knocked him out of his seat. His seatbelt kept him in the driver's seat. He estimated that the truck was moved sideways approximately one foot. He felt that his estimation was correct because of the tire mark he viewed at the collision scene.

**INTERVIEW CONCLUDED APPROX. 0820 HRS., WED., 020905.**

2. **Witness(es)/Person(s) Contacted**

**Interview Witness #1, Amy R. Stratton:**

Witness #1, Mrs. Amy R. Stratton, DOB 062973, of 2300 West 17th, Street, Apartment G, Wilmington, Delaware 19806, home telephone number 302-425-5436, work telephone number 610-341-7675, was contacted and interviewed by Sgt. Matthew E. Cox on Tuesday afternoon, October 26th, 2004. The interview was conducted in Sgt. Cox's assigned police patrol vehicle at the collision scene and was recorded with handwritten field notes. See Sgt. Cox's supplemental report for additional details and related statement information.

**Interview Witness #2, John E. Seiffert:**

Witness #2, Mr. John E. Seiffert, DOB 031270, of 10 Haslet Way, Wilmington, Delaware 19807, home telephone number 302-777-1644, cell phone number 302-521-1995, was contacted and interviewed by me on Wednesday afternoon, October 27th, 2004, at approximately 1355 hours. The interview was conducted via telephone and recorded with handwritten notes. The following is a brief synopsis of the content of that interview.

10/05/2005 11:47 12153968388 KATS AND ASSOCIATES PAGE 24/35

02

Mr. Seiffert stated that he was traveling eastbound on Twaddell Mill Road and was located behind the UPS truck when the collision occurred. He was leaving a job site at 517 Twaddell Mill Road. The UPS truck passed by his location as he was coming out of the driveway at 517 Twaddell Mill Road. Mr. Seiffert stated that he and the UPS truck came to a complete stop at the stop sign. The UPS truck then began to turn left and suddenly stopped. The truck was approximately two feet away from the center of the double yellow line. A motorcycle was approaching from the north and was traveling southbound. The rear wheel of the motorcycle came off of the ground (described by Mr. Bard as a front wheelie). The motorcycle operator's feet left the pegs of the motorcycle and the operator held onto the handlebars. The operator and motorcycle struck the truck. The top back area of the operator's head was tucked down and his back struck the truck. Mr. Seiffert stated that he immediately ran over to the motorcycle operator. Mr. Seiffert estimated that the motorcycle was approximately forty-five feet away from the truck when he first saw the motorcycle. He did not hear the motorcycle before the collision occurred. He estimated the speed of the motorcycle to be approximately thirty-five to forty-five miles per hour at impact. He stated that he was not sure of how fast the motorcycle was traveling (initial speed). He estimated that it had already been decelerating for approximately one to two seconds when he observed it. He described weather conditions as overcast and stated that the temperature was approximately sixty-two degrees. The roadway surface was dry and visibility was moderate. Traffic conditions were described as light.

**INTERVIEW CONCLUDED APPROX. 1405 HRS., WED., 102704.**

**Person Contacted #1, Christine C. DiPaolo:**

Person Contacted #1, Ms. Christine C. DiPaolo, WFN-39, DOB 011565, of 9 Concord Way, Chadds Ford, Pennsylvania 19317, home telephone number 610-388-7869, was contacted and interviewed by me on Wednesday afternoon, February 2nd, 2005, at approximately 1545 hours. The interview was conducted via telephone and recorded with handwritten notes. The following is a brief synopsis of the content of that interview.

Ms. DiPaolo stated that she was coming from Delaware and was traveling northbound on Montchanin Road, heading toward Pennsylvania. The car in front of her stopped at the intersection and the female operator jumped out and stated "Somebody must be hurt" and "I'm a nurse". Ms. DiPaolo told the female that she was also a nurse and they responded to the location of the motorcycle operator. She initially checked and felt a weak pulse. She was worried about the operator's neck. The operator then stopped breathing and both nurses began CPR (cardio pulmonary resuscitation). The operator never regained a pulse. Ms. DiPaolo asked someone to call 911. The operator was basically dead at the scene. The collision had just happened when she arrived. It was a fresh collision scene. The UPS truck was stopped and partially in the intersection, almost mid-way. Ms. DiPaolo stated that she is familiar with the area. It is difficult to see, from both ways (referring to both Montchanin Road and Twaddell Mill Road). She described the intersection as a very bad intersection. There are many trees in the area of the intersection, which helps add to the visibility problem. The truck operator had to come out into the

10/05/2005 11:47 12153968388 KATS AND ASSOCIATES PAGE 25/35

02

intersection to see. The other nurse (Identified as Witness #1, Ms. Amy R. Stratton) told her that the motorcycle operator was on her tail and passed her on a double yellow line just before the collision happened. Ms. Stratton told her that the motorcycle was traveling fast when it passed her and before it went out of sight. It appeared that the motorcycle and operator hit the truck and dropped to the ground. She remembers the truck driver moving the truck to help provide them with some working space. The UPS driver was very upset. She described the collision day as a nice fall day. It was clear.

**INTERVIEW CONCLUDED APPROX. 1556 HRS., WED., 020205.**

On Tuesday afternoon, February 8th, 2005, at approximately 1455 hours, Ms. DiPaolo, returned my voice mail message and answered an additional question that I had regarding the positioning of the motorcycle after the collision had occurred. Ms. DiPaolo stated that she could not recall if the motorcycle had been moved after the collision had occurred. She only remembered the UPS truck being moved to provide additional space to assist with medical aid to the motorcycle operator. She was remained focused on attending to the injured operator and did not notice if the motorcycle had been moved.

**INTERVIEW CONCLUDED APPROX. 1500 HRS., TUE., 020805.**

**Person Contacted #2, Colton M. Swift:**

Person Contacted #2, Mr. Colton M. Swift, WMN-27, DOB 122877, of 209 Megan Court, Bear, Delaware 19702, cell phone number 302-588-6710, work telephone number 302-322-4120, Service Advisor for Honda East, of 620 Pulaski Highway, Bear, Delaware 19702, business telephone 302-322-4120, was contacted and interviewed by me on Thursday afternoon, February 3rd, 2005, at approximately 1255 hours. The interview was conducted via telephone and recorded with handwritten notes. The following is a brief synopsis of the content of that interview.

Mr. Swift stated that he is the Service Advisor for Honda East, of 620 Pulaski Highway, Bear, Delaware 19702, business telephone number 302-322-4120. He has had experience with motorcycles since 1994 and has been working for Honda East since 2000. The motorcycle in this investigation had been taken to Honda East for repair estimates. The damage was estimated to be approximately $3,500 to $4,000 and the vehicle was determined to be totaled. The frame of the motorcycle was not bent. The brake system of the motorcycle was very good. The bike has the ability to perform "stoppies" (front wheel stops). Lower speeds (between twenty to twenty-five miles per hour) provide the ability to get the rear tire to pop off of the ground at a low height or hop. Higher, more significant speeds are needed to bring the rear tire up off of the ground into a "stoppie" position. Based on a description of the dynamics of this investigation, Mr. Swift estimated that the speed of the motorcycle would have to have been approximately fifty to sixty miles per hour, or higher, to get the bike to do what it did in this collision.

**INTERVIEW CONCLUDED APPROX. 1310 HRS., THRU., 020305.**

10/05/2005 11:47 12153968388 KATS AND ASSOCIATES PAGE 26/35

02

**Person Contacted #3, Karen Garraway:**

Person Contacted #3, Ms. Karen Garraway, DOB 071756, of 1041 Radley Drive, West Chester, Pennsylvania 19382, home telephone number 610-696-0286, was contacted and interviewed by me on Wednesday afternoon, February 9th, 2005, at approximately 1340 hours. The interview was conducted via telephone and recorded with handwritten notes. The following is a brief synopsis of the content of that interview.

Ms. Carraway stated that she was traveling northbound on Montchanin Road and arrived at the scene of the collision briefly after it happened. She did not witness the crash. She initially wondered why the UPS truck was located where it was. She saw the driver of the UPS truck getting out of the truck as she approached from a distance and was not sure what was going on. Ms. Carraway stated that she felt that something was not right. Ms. Carraway was the first northbound car to arrive at the collision scene. Another person, in another car (Person Contacted #1, Ms. Christine C. DiPaolo) was located directly behind her vehicle. Ms. Carraway stated that she was on her way home. She got out of her car to see what had happened. A motorcycle operator was on the ground, face down, and was basically lifeless. She and PC-1 DiPaolo immediately began to attending to the operator's medical needs. They rolled him over onto his back and took off his motorcycle helmet. They instructed the UPS driver to back the truck up to provide them with some additional working space. The truck was in her back as she attempted to assist the injured operator. Ms. Carraway stated that she was not sure about the motorcycle being moved. The operator's one leg may have been near the motorcycle and it was moved. She was not sure.

**INTERVIEW CONCLUDED APPROX. 1348 HRS., WED., 020905.**

**D. Reconstruction** FATAL

Due to the lack of specific physical evidence at the collision scene, there was no reconstruction speed calculations made during this investigation. See Investigator's Opinion/Comments Section of this report for additional details and related information.

Visibility tests were conducted at the collision scene on the day of the collision as well as during follow-up visits to the intersection. In the area of the collision, Montchanin Road is a rural roadway that consists of many hills, sharp curves and bends in the roadway. The intersection of Montchanin Road and Twaddel Mill Road is somewhat of a hidden intersection that minimizes visibility for all motorists in all directions of travel. An intersection ahead sign is posted approximately fifty feet prior to the intersection, which advises southbound traveling motorists of the intersection. Heavy vegetation, numerous trees and raised embankment areas additionally add to the already existing limited visibility issues at this intersection. Montchanin Road consists of an "S" curve that is located north of the collision intersection. From that point, the roadway then bends sharply to the right for southbound traveling motorists. The intersection is controlled by a

10/05/2005 11:47 12153968388 KATS AND ASSOCIATES PAGE 27/35

posted stop sign on Twaddel Mill Road, which is located on the southwest corner of the intersection, approximately sixteen feet west of the west edge seam of Montchanin Road. From this location, visibility for southbound traveling vehicles on Montchanin Road is obstructed. It is necessary for eastbound traveling motorists to move forward toward Montchanin Road to visibly see north and southbound traveling motorists that are approaching the intersection. A small bridge, constructed of stonewalls on either side of the roadway, is located north of the collision scene intersection. The south side edges of the bridge are located approximately one hundred fifty-six feet six inches north of the center of Twaddel Mill Road. The west side bridge wall bends to the left as the wall continues in a northerly direction, toward the private property residence of 4001 and 4007 Montchanin Road. The curve in the wall is located approximately one hundred eighty-seven feet six inches north of the center of Twaddel Mill Road. A hedge row is located along the northwest side of the roadway, on the northern side of the 4001 and 4007 residence entrance/exit driveway, and located approximately two hundred seventy-nine feet north of the center of Twaddel Mill Road.

Positioned at the stop sign, in my assigned police vehicle, I was able to partially see the hedge row at the residence driveway but was unable to visibly see the roadway or detect if southbound traffic was approaching due to the bend in the roadway and the existing foliage. As I moved closer to the seam of Montchanin Road and toward the west side edge of the southbound lane of travel I was able to see the roadway in the area of the curve of the bridge stone wall (approximately one hundred eighty feet north of the approximate area of where the UPS driver would have been located from that location).

Based on witness statements, operator #2 statements and physical evidence at the collision scene, the UPS truck had stopped approximately two feet away from the center of the roadway at impact. This provided the entire northbound lane of travel to remain open for an evasive maneuver (approximately ten feet six inches), if time and traveled speed had permitted.

The total weight of vehicle #1 was approximately 596 pounds (operator = 196 lbs./motorcycle = 400 lbs.) and the total weight of vehicle #2 was approximately 15,910 (operator = 210 lbs./UPS van = 15,500 lbs./packages = 200 lbs), which equates to an approximate twenty-six to one ratio relationship. Although the exact speed of vehicle #1 was unable to be determined as part of this investigation, it would be safe to say that the speed of the motorcycle had to be significantly high enough to influence and move the stopped UPS van approximately two feet.

**E. Prosecutive Action**

The Delaware State Police Troop 1-A F.A.I.R. Unit has been in close contact with the Delaware State Attorney General's Office since the investigation began on Tuesday afternoon, October 26th, 2004. Deputy Attorney General (DAG) Sean Lugg was initially contacted at the beginning of this investigation and has been advised of the stages of the investigation as they have developed and unfolded. On Wednesday morning, February 9th, 2005, at approximately 1000 hours, I met with DAG Paul Wallace, of the Attorney

10/05/2005 11:47 12153968388 KATS AND ASSOCIATES PAGE 28/35

General's Office and discussed the facts and findings of this investigation. DAG Wallace stated that there would be no prosecution in this case.

**F. Investigator's Opinion / Comments**

Based on the information obtained through this investigation, it is my opinion that the primary cause of this fatal motor vehicle collision was from the result of Operator #1, Victim/Injured #1, Mr. John S. Vaseck, Jr., operating vehicle #1 in a manner that was too fast for the conditions he experienced as he entered a sharp curve in the roadway and approached the location of a hidden intersection.

One independent witness initially observed Mr. Vaseck traveling southbound on Montchanin Road when he came up behind her as she was traveling southbound. The witness vehicle was traveling slowly at that time because a bicyclist was located directly in front of her vehicle. Mr. Vaseck's motorcycle approached her quickly from behind and slowed down when it reached her location. Mr. Vaseck and the witness vehicle both crossed over the double yellow line when it was safe to do so and drove around the bicyclist. The witness stated that as she moved back into the southbound lane of travel, Mr. Vaseck immediately passed her at a fast rate of speed and continued to travel southbound out of sight at an excess speed of approximately fifty miles per hour. The witness additionally stated that she rolled up onto the collision scene only a few seconds later.

An additional independent witness, located directly behind the UPS truck stated that the UPS truck came to a complete stop at the posted stop sign at the intersection and then slowly began to enter the intersection to turn left. The truck was approximately two feet away from the center of the double yellow line when the collision occurred. The motorcycle was approximately forty-five feet away from the truck when he first saw it and estimated the speed at impact to be approximately thirty-five to forty-five miles per hour. The witness additionally stated that the motorcycle had already been decelerating for approximately one to two seconds before it hit the truck and that he did not know how fast the motorcycle had been initially traveling before the operator started to apply the brakes. The witness described the manner in which the motorcycle and operator made contact with the UPS truck by saying that; the rear wheel of the motorcycle came off of the ground (described as a front wheelie), the motorcycle operator's feet left the pegs of the motorcycle, the operator held onto the handlebars, the operator and motorcycle struck the truck, the top back area of the operator's head was tucked down and his back struck the truck at impact.

The Service Advisor for Honda East was contacted by me as part of this investigation in regards to addressing specific motorcycle capabilities. The advisor stated that the motorcycle in this collision had been delivered to Honda East for repair estimates. The damage was estimated to be approximately $3,500 to $4,000, the vehicle was determined to be totaled. The frame of the motorcycle was not bent. The brake system of the motorcycle was very good. The bike has the ability to perform "stoppies" (front wheel stops). Lower speeds (between twenty to twenty-five miles per hour) provide the ability to get the rear tire to pop off of the ground at a low height or hop. Higher, more significant speeds are needed to bring the rear tire up off of the ground into a "stoppie" position. Based on a

description of the dynamics of this investigation, the service advisor estimated that the speed of the motorcycle would have to have been approximately fifty to sixty miles per hour, or higher, to get the bike to do what it did in this collision.

Statements provided by Assistant Medical Examiner, Dr. Jennie Vershvovsky, M.D., after the autopsy of Mr. Vascek had been completed, supported the fact that Mr. Vascek died as the result of multiple blunt force injuries to the torso. Mr. Vascek was wearing a motorcycle helmet, heavy leather jacket, two sweatshirts and motorcycle gloves at the time of the collision, which helped protect the outside areas of his body. Very few exterior injuries were observed on Mr. Vascek's body however, internal injuries were massive in severity due to the amount of force that was applied to his body and absorbed by his body when it was sandwiched in between the UPS truck and the motorcycle. The location of the motorcycle damage (upper areas of the motorcycle) additionally supports the description of how this collision occurred, as well as, helps explain why Mr. Vascek's internal injuries were so extensive.

In the area of the collision, Montchanin Road is a rural roadway that consists of many hills, sharp curves and bends in the roadway. The intersection of Montchanin Road and Twaddel Mill Road is somewhat of a hidden intersection that minimizes visibility for all motorists in all directions of travel. Heavy vegetation, numerous trees and raised embankment areas additionally add to the already existing limited visibility issues at this intersection. Operator #2, Mr. Bard, stated that he stopped at the posted stop sign, could not see, moved forward and still did not see anything coming before he slowly began to enter the intersection, intending to execute a left turn. Operator #1, Victim/Injured #1, Mr. Vascek obviously observed the UPS truck moments before the collision occurred because he violently applied the front brakes of the motorcycle, causing it to go into a front wheelie position or stoppie (rear wheel completely lifted up and off of the ground) before the motorcycle impacted with the truck. Limited evidence and the lack of specific evidence at the collision scene minimized the opportunity of establishing a more accurate area of where Mr. Vascek was located when he began to apply the brakes of his motorcycle. An additional factor that complicated these efforts resulted from the fact that both vehicles and the victim's body were removed from their original resting positions by individuals at the collision scene to assist medical personnel with providing immediate medical attention to Mr Vascek..

**Cpl/3 Jeffrey W. Weaver, 7652**
**Collision Reconstruction Specialist**
**Delaware State Police, Troop 1-A**

SANDY RYDER
FARS-ANALYST
PHONE: 302-739-5933
FAX # : 302-739-5982

DELAWARE STATE POLICE
TRAFFIC CONTROL SECTION
P. O. BOX 430
DOVER, DELAWARE 19903

To: Nina – KJV & Assoc. From: SANDY RYDER

Fax: Pages: 5

Phone: Date: ~~3/31/05~~ ~~4/1/05~~ 4/4/05

☐ Urgent X For Review ☐ Please Comment ☐ Please Reply ☐ Please Recycle

• Comments:

Supplement attached
SR

04/04/2005 14:55 3027396982 DE STATE POLICE PAGE 02

027

SUMMARY

# DSP Troop 1

| Crash Classification | Date of Crash | Time of Crash | Hit & Run? | Private Property? | Crash Case Identifier |
|---|---|---|---|---|---|
| 04 - Fatality | | | | | 01-04-122194 |
| Traffic Section Classification: 02 - Reportable | 10/26/2004 | 16:20 Hrs. | No | No | Departmental Crash? No |

| Grid Number | Sector Number | County | Within corporate limits of: |
|---|---|---|---|
| "N/A" | "N/A" | "N/A" | "N/A" |

Literal Description

X Coordinate

Y Coordinate

| If the Crash Occurred Outside of City Limits Indicate the General Vicinity | Direction | of | Nearest City |
|---|---|---|---|
| "N/A" | "N/A" | | "N/A" |

| On Road, Street, or Highway | Direction of Travel | At Intersection with: |
|---|---|---|
| "N/A" | "N/A" | "N/A" |

Note: Unless the Crash occurred at an intersection which is completely described above, use the space below to give the exact location from a milepost or definable intersection, bridge, or railroad crossing, using two distances and directions if necessary.

| Distance | Direction | | Distance | Direction | |
|---|---|---|---|---|---|
| "N/A" | "N/A" | and | "N/A" | "N/A" | of |

| Milepost Number | | Definable Intersection, Bridge, or Railroad Crossing |
|---|---|---|
| "N/A" | Or | "N/A" |

## ACCIDENT ENVIRONMENT

| Location of First Harmful Event | Manner of Crash/Collision Impact |
|---|---|
| "N/A" | "N/A" |
| **Ambient Light** | **Road Surface Condition** |
| "N/A" | "N/A" |

Weather Conditions (up to two): "N/A"

## ROADWAY CHARACTERISTICS

| Contributing Circumstances: | |
|---|---|
| Environment | "N/A" |
| Roadway | "N/A" |

| Type of Road | Type of Roadway Junction | Traffic Control Type |
|---|---|---|
| "N/A" | "N/A" | "N/A" |

**SCHOOL BUS RELATED?** **WORK ZONE RELATED?**

| School Bus Related? | Children Involved? | Work Zone Related? | Type of Work Zone |
|---|---|---|---|
| "N/A" | "N/A" | "N/A" | "N/A" |

| Workers Present? | Work Zone Location of Crash |
|---|---|
| "N/A" | "N/A" |

## SEQUENCE OF EVENTS

FATAL

First Harmful Event: "N/A"

## INCIDENT INFORMATION

| Reporting Police Agency Identifier | Type of Police Agency |
|---|---|
| DSP Troop 1 | 02 - State Police |
| **Date Crash Reported to Police Agency** | **Time Crash Reported to Police Agency** |
| 10/26/2004 | Hrs. |
| **Time Officer Notified of Crash** | **Time Officer Arrived At Scene** |
| "N/A" Hrs. | "N/A" Hrs. |
| **Date of Report** | **Source of Information** |
| 10/26/2004 | "N/A" |
| **Exchange Information Given to All Drivers?** | **Investigation Made at Scene?** |
| | |
| **Referred to Special Unit** | **Other Technical Investigating Agency** |
| "N/A" | "N/A" |

| Reporting Officer Name | Officer IBM | Approver Last Name | Approver IBM | Approval Date | Approval Time |
|---|---|---|---|---|---|
| COX | 002 | "N/A" | "N/A" | "N/A" | "N/A" |

02'

UNIT 001

**DRIVER INFORMATION**

Driver's Name - Last: VASCEK | First: JOHN | Middle: S | Suffix: JR

Is All Information Known for this unit Unit? | Date of Birth: "N/A" | Age: "N/A" | Gender: "N/A" | Phone: "N/A"

Address: "N/A" | City: "N/A" | State: "N/A" | Zip: "N/A"

**Driver License**

Driver's License Number: "N/A" | License State: "N/A" | License Expiration Date: "N/A" | License Class: "N/A"

License Endorsements: NONE | License Restrictions: NONE | Driver Distraction: "N/A" | Alcohol/Drugs Suspected: "N/A"

Alcohol Test Status: "N/A" | Alcohol Type of Test: "N/A" | Alcohol Test Results: "N/A"

Drug Test Status: "N/A" | Drug Type of Test: "N/A" | Drug Test Results: "N/A"

Insurance Co. Name: "N/A" | Insurance Policy #: "N/A" | Insurance Expiration Date: "N/A" | Insurance Co. Phone Number: "N/A"

**DRIVER INJURY**

Injury Status: "N/A" | Description of Injuries: "N/A" | Occupant Protection System Use: "N/A"

Airbag Deployment: "N/A" | Airbag Switch Status: "N/A" | Trapped: "N/A"

Ejection: "N/A" | Ejection Path: "N/A"

Physician's Name: "N/A" | Admission Status

Source of Transport: "N/A" | Transported to: "N/A"

EMS Response Agency ID: "N/A" | EMS Response Run Number: "N/A"

**CITATION INFO**

Cited | Ticket Number 1: "N/A" | Violation Charge Code 1: "N/A" | Violation Charge 1: "N/A"

Ticket Number 2: "N/A" | Violation Charge Code 2: "N/A" | Violation Charge 2: "N/A"

Ticket Number 3: "N/A" | Violation Charge Code 3: "N/A" | Violation Charge 3: "N/A"

Ticket Number 4: "N/A" | Violation Charge Code 4: "N/A" | Violation Charge 4: "N/A"

**OWNER INFO**

Owner's Name - Last | First: "N/A" | Middle: "N/A" | Suffix: "N/A"

Company Name (If Owner): "N/A" | Address: "N/A" | City: "N/A" | State: "N/A" | Zip: "N/A"

**VEHICLE INFO**

Vehicle Year: "N/A" | Make: "N/A" | Model: "N/A" | Style: "N/A" | Color: "N/A"

VIN #: "N/A" | License Plate #: "N/A" | State: "N/A" | Year: "N/A" | Departmental Vehicle Type: "N/A" | Departmental Veh Number: "N/A" | Speed Limit: "N/A" | Speed Limit Units: "N/A"

Vehicle Role: "N/A" | Vehicle Maneuver/Action: "N/A" | Direction of Travel Before Crash: "N/A"

Direction of Force to Vehicle: "N/A" | Underride/Override: "N/A" | Point of Impact: "N/A"

Most Damaged Area: "N/A" | Extent of Damage: "N/A" | Approximate Cost Repair: "N/A" | Total Occupants: "N/A"

Traffic Control Device Type: "N/A" | Trafficway Description: "N/A" | Access Control: "N/A"

Driver Condition: "N/A"

Contributing Circumstances, Driver (up to two): "N/A"

Vehicle Configuration: "N/A" | Cargo Body Type: "N/A"

Vehicle Towed?: "N/A" | Vehicle Towed By: "N/A" | Vehicle Towed To: "N/A"

Emergency Vehicle?: "N/A" | Emergency Use?: "N/A" | Emergency Vehicle Type: "N/A"

Is CMV?: "N/A" | Criteria for Reporting Carrier Information (up to four): "N/A"

**SEQUENCE OF EVENTS**

First Event: "N/A"

Second Event: "N/A"

Third Event: "N/A"

Fourth Event: "N/A"

Most Harmful Event for this Vehicle: "N/A"

027

002

**DRIVER INFORMATION**

| Driver's Name - Last | First | Middle | Suffix |
|---|---|---|---|
| BARD | MARK | A | "N/A" |

| Is All Information Known for this unit Unit? | Date of Birth | Age | Gender | Phone |
|---|---|---|---|---|
| | "N/A" | "N/A" | "N/A" | "N/A" |

| Address | City | State | Zip |
|---|---|---|---|
| "N/A" | "N/A" | "N/A" | "N/A" |

**Driver License**

| Driver's License Number | License State | License Expiration Date | License Class |
|---|---|---|---|
| "N/A" | "N/A" | "N/A" | "N/A" |

| License Endorsements | License Restrictions | Driver Distraction | Alcohol/Drugs Suspected |
|---|---|---|---|
| NONE | NONE | "N/A" | "N/A" |

| Alcohol Test Status | Alcohol Type of Test | Alcohol Test Results |
|---|---|---|
| "N/A" | "N/A" | "N/A" |

| Drug Test Status | Drug Type of Test | Drug Test Results |
|---|---|---|
| "N/A" | "N/A" | "N/A" |

| Insurance Co. Name | Insurance Policy # | Insurance Expiration Date | Insurance Co. Phone Number |
|---|---|---|---|
| "N/A" | "N/A" | "N/A" | "N/A" |

**DRIVER INJURY**

| Injury Status | Description of Injuries | Occupant Protection System Use |
|---|---|---|
| "N/A" | "N/A" | "N/A" |

| Airbag Deployment | Airbag Switch Status | Trapped |
|---|---|---|
| "N/A" | "N/A" | "N/A" |

| Ejection | Ejection Path |
|---|---|
| "N/A" | "N/A" |

| Physician's Name | Admission Status |
|---|---|
| "N/A" | |

| Source of Transport | Transported to |
|---|---|
| "N/A" | "N/A" |

| EMS Response Agency ID | EMS Response Run Number |
|---|---|
| "N/A" | "N/A" |

**CITATION INFO**

| Cited | Ticket Number 1 | Violation Charge Code 1 | Violation Charge 1 |
|---|---|---|---|
| | "N/A" | "N/A" | "N/A" |

| Ticket Number 2 | Violation Charge Code 2 | Violation Charge 2 |
|---|---|---|
| "N/A" | "N/A" | "N/A" |

| Ticket Number 3 | Violation Charge Code 3 | Violation Charge 3 |
|---|---|---|
| "N/A" | "N/A" | "N/A" |

| Ticket Number 4 | Violation Charge Code 4 | Violation Charge 4 |
|---|---|---|
| "N/A" | "N/A" | "N/A" |

**OWNER INFO**

| Owner's Name - Last | First | Middle | Suffix |
|---|---|---|---|
| | "N/A" | "N/A" | "N/A" |

| Company Name (If Owner) | Address | City | State | Zip |
|---|---|---|---|---|
| "N/A" | "N/A" | "N/A" | "N/A" | "N/A" |

**VEHICLE INFO**

| Vehicle Year | Make | Model | Style | Color |
|---|---|---|---|---|
| "N/A" | "N/A" | "N/A" | "N/A" | "N/A" |

| VIN # | License Plate # | State | Year | Departmental Vehicle Type | Departmental Veh Number | Speed Limit | Speed Limit Units |
|---|---|---|---|---|---|---|---|
| "N/A" | "N/A" | "N/A" | "N/A" | "N/A" | "N/A" | "N/A" | "N/A" |

| Vehicle Role | Vehicle Maneuver/Action | Direction of Travel Before Crash |
|---|---|---|
| "N/A" | "N/A" | "N/A" |

| Direction of Force to Vehicle | Underride/Override | Point of Impact |
|---|---|---|
| "N/A" | "N/A" | "N/A" |

| Most Damaged Area | Extent of Damage | Approximate Cost Repair | Total Occupants |
|---|---|---|---|
| "N/A" | "N/A" | "N/A" | "N/A" |

| Traffic Control Device Type | Trafficway Description | Access Control |
|---|---|---|
| "N/A" | "N/A" | "N/A" |

Driver Condition
"N/A"

Contributing Circumstances, Driver (up to two)
"N/A"

| Vehicle Configuration | Cargo Body Type |
|---|---|
| "N/A" | "N/A" |

| Vehicle Towed? | Vehicle Towed By | Vehicle Towed To |
|---|---|---|
| "N/A" | "N/A" | "N/A" |

| Emergency Vehicle? | Emergency Use? | Emergency Vehicle Type |
|---|---|---|
| "N/A" | "N/A" | "N/A" |

| Is CMV? | Criteria for Reporting Carrier Information (up to four) |
|---|---|
| "N/A" | "N/A" |

**SEQUENCE OF EVENTS**

First Event
"N/A"

Second Event
"N/A"

Third Event
"N/A"

Fourth Event
"N/A"

Most Harmful Event for this Vehicle
"N/A"

027

CPL/3 JEFF WEAVER IS THE LEAD INVESTIGATOR FOR THIS CRASH.

I RESPONDED TO THE SCENE OF THIS FATAL COLLISON TO ASSIST CPL/3 WEAVER WITH THE INVESTIGATION. AT THE SCENE I COMPLETED THE FIELD SKETCH AND MEASURED THE SCENE EVIDENCE. I ALSO INTERVIEWED A WITNESS TO THE CRASH, AMY STRATTON. THE INTERVIEW WAS CONDUCTED AT THE SCENE AND WAS RECORDED WITH HANDWRITTEN NOTES. THE FOLLOWING IS A SYNOPSIS OF THE INTERVIEW:

MS. STRATTON STATED SHE WAS SOUTHBOUND ON RT. 100. SHE ADVISED THAT SHORTLY AFTER A LARGE WHITE BRIDGE SHE CAME UPON A BICYCLIST THAT CAUSED HER TO HAVE TO SLOW DOWN. SHE ADVISED SHE HAD BEEN BEHIND THE CYCLIST FOR "QUITE SOME TIME" BECAUSE SHE COULD NOT PASS DUE TO THE CURVES IN THE ROAD. MS. STRATTON STATED THAT A MOTORCYCLE CAME UP BEHIND HER QUICKLY AND SLOWED. SHE STATED THAT THE MOTORCYLE FOLLOWED HER CLOSELY, BUT DID NOT DRIVE AGGRESSIVELY. MS. STRATTON ADVISED THAT THE MOTORCYLE WAS BEHIND HER FOR APPROXIMATELY 45 SECONDS WHEN SHE REACHED THE AREA OF A SMALL BRIDGE AND A DRIVEWAY, AND WAS ABLE TO SEE FAR ENOUGH DOWN THE ROAD TO PASS THE CYCLIST. MS. STRATTON STATED SHE WENT OVER THE DOUBLE YELLOW LINE TO GIVE THE CYCLIST PLENTY OF ROOM, AND THE MOTORCYCLE FOLLOWED HER AROUND THE BICYCLE. AFTER SHE PASSED THE CYCLIST, SHE SAID SHE MOVED BACK TO THE RIGHT SIDE OF THE ROAD, HOWEVER THE MOTORCYCLE REMAINED ON THE LEFT SIDE OF THE ROAD AND ACCELERATED PAST HER. SHE STATED THAT THE MOTORCYCLE ACCELERATED RAPIDLY, HOWEVER DID NOT SPIN WHEELS OR PERFORM ANY "WHEELIES". MS. STRATTON STATED THAT SHE ACCLERATED BACK UP TO APPROXIMATELY 50 MPH, HOWEVER DID NOT GAIN ON THE MOTORCYCLE AND DID NOT SEE IT AGAIN UNTIL SHE CAME UPON THE CRASH SCENE SEVERAL SECONDS LATER. SHE ADVISED THAT IT LOOKED LIKE THE UPS TRUCK WAS STILL ROCKING FROM THE IMPACT WHEN SHE ARRIVED AT THE SCENE. SHE ADVISED THAT THE DIRT PATCH ON THE ROAD IS THE LOCATION OF THE IMPACT AND FINAL RESTING PLACE OF THE MOTORCYCLE.

| WIT D01 | Last Name | First Name | Middle Name | Suffix |
|---|---|---|---|---|
| | STRATTON | AMY | REBECCA | |
| | Address: 2300 W. 17TH ST. APT. Q | City: WILMINGTON | State: DE | Zip: 19806 |
| | Home Phone #: (302) 426-5348 Ext. | Work Phone #: (610) 341-7675 Ext. | | |